Martin E. GROSSMAN, Petitioner,

v.

James V. CROSBY, Jr., Respondent.

No. 8:98–CV–1929–T–17MSS.

United States District Court,
M.D. Florida.
Tampa Division.

Jan. 31, 2005.

Jack Wayne Crooks, Tampa, FL, for Martin E. Grossman, Petitioner.

Carol Marie Dittmar, Office of the Attorney General, Tampa, FL, for Michael W. Moore, Robert A. Butterworth, Respondents.

Joseph T. Hobson, Staack, Simms & Hernandez, P.A., Clearwater, FL, for Martin E. Grossman, Petitioner.

Tracy L. Martinell, Chamblee, Johnson & Haynes, P.A., Tampa, FL, for Martin E. Grossman, Petitioner.

Stephen Jeffrey Shama, Manuel A. Machin, P.A., Tampa, FL, for Martin E. Grossman, Petitioner.

James Vincent Viggiano, Jr., Capital Collateral Regional Counsel, Middle Region, Tampa, FL, for Martin E. Grossman, Petitioner.

### ORDER

KOVACHEVICH, District Judge.

This cause is before the Court on Petitioner Martin E. Grossman (Grossman's) amended 28 U.S.C. § 2254 petition for writ of habeas corpus (hereinafter "petition") and memorandum in support of the amended petition (Doc. Nos. 49 and 48, respectively); Respondent's response to the petition (Doc. No. 57); and Grossman's reply to the response. (Doc. No. 59). Grossman is a Florida prisoner under penalty of death challenging his conviction and sentence entered by the Circuit Court for the Sixth Judicial Circuit, Pinellas County, Florida.

A review of the petition, the response, the reply, and the entire record demonstrates that Grossman's petition for writ of habeas corpus must be **DENIED.**

### BACKGROUND

Grossman and a companion, Thayne Taylor, drove to a wooded area of Pinellas County, Florida, on the night of December 13, 1984, to shoot a handgun that Grossman had recently obtained by burglarizing a home. Grossman lived in neighboring Pasco County at his mother's home and was on probation following a recent prison term. Wildlife Officer Margaret (Peggy) Park, patrolling the area in her vehicle, happened on the scene and became suspicious. She left her vehicle with the motor, lights, and flashers on, and took possession of Grossman's weapon and driver's license. Grossman pleaded with her not to turn him in because having a weapon in his possession and being outside of Pasco County would cause him to return to prison for violation of probation. Officer Park refused Grossman's plea, opened the driver's door to her vehicle and picked up the radio microphone to call the sheriff's office. Grossman grabbed the officer's large flashlight and struck her repeatedly on the head and shoulders, forcing her upper body into the vehicle. Officer Park reported "I'm hit" over the radio and screamed. Grossman continued the attack, and called for help from Taylor, who joined in the assault. Officer Park managed to draw her weapon, a .357 magnum handgun, and fired a wild shot within the vehicle. Simultaneously, she temporarily disabled Taylor by kicking him in the groin. Grossman, who is a large man, wrestled the officer's weapon away from her and fired a fatal shot into the back of her head. The spent slug exited her head in front and fell into a drinking cup inside the vehicle. Blood stains, high velocity splatters, the location of the spent slug, and the entry and exit wounds show that the victim's upper body was inside the vehicle with her face turned inward or downward at the moment she was killed.

Grossman and Taylor retrieved Grossman's handgun and driver's license, and fled with those objects and the officer's weapon. They returned to Grossman's home, where they told the story of the killing, individually and collectively, to Brian Hancock, a friend who lived with the Grossmans. Hancock and Taylor buried the two weapons nearby. Grossman, who was covered with blood, attempted unsuccessfully to burn his clothes and shoes which Taylor later disposed of in a nearby lake.

Approximately a week later, Grossman and Taylor, individually and collectively, recounted the story of the murder to another friend, Brian Allan. Approximately eleven days after the murder, Hancock told the police, and Grossman and Taylor were arrested. Taylor, upon his arrest, recounted the story of the murder to a policeman and, later, Grossman told the story to a jailmate, Charles Brewer. Grossman and Taylor were tried jointly, over Grossman's objection.

At trial, the state introduced the testimony of Hancock, Allan, and Brewer against Grossman. The state also introduced Taylor's statement to the policeman *against Taylor only*. In addition, the state introduced the charred shoes, the two weapons, prints taken from the victim's vehicle, testimony from a neighbor who observed the attempted burning of the clothes, Grossman's efforts to clean the Grossman van, and the changing of the tires on the Grossman van. Expert testimony as to the cause of death and the significance of blood splatter evidence were also introduced by the state.

The jury was instructed that Taylor's admissions to the policeman could only be used against Taylor, not Grossman. The jury was instructed on premeditation and felony murder based on robbery, burglary, and escape. A general verdict of first-

degree murder was returned against Grossman. Taylor was found guilty of third-degree murder. The judge followed the jury's unanimous recommendation that Grossman be sentenced to death. *See Grossman v. State*, 525 So.2d 833 (Fla. 1988), *cert. denied*, 489 U.S. 1071, 109 S.Ct. 1354, 103 L.Ed.2d 822 (1989), and *Grossman v. Dugger*, 708 So.2d 249 (Fla.1997), in which the Florida Supreme Court set out the facts of the case.

## PROCEDURAL HISTORY

On January 18, 1985, Grossman was charged by Indictment with the first degree murder of Margaret Park. (Ex. A, V1/9).[1] Trial was held October 22–31, 1985, before the Honorable Crockett Farnell, Circuit Judge. (Ex. A, V8–V14). The jury found Grossman guilty as charged. (Ex. A, V2/222; V15/2564). Following the penalty phase, a jury recommended the death penalty by a vote of 12–0. (Ex. A, V2/250; V15/27 13).

On March 19, 1986, Judge Farnell entered his written order containing findings of fact in support of Grossman's death sentence. (Ex. A, V2/289–90). The state trial court judge found three aggravating factors: 1) the murder was committed during the course of a robbery or burglary; 2) the murder was committed to avoid arrest and hinder law enforcement; and, 3) the murder was especially heinous, atrocious or cruel.[2] The court rejected the proposed

1. Respondent filed the record on direct appeal of Case No. 84–11698CFANO as Exhibit A. Exhibit A is divided into volumes, and citations will be designated as volume number, followed by page number. Exhibit A consists of 17 volumes and one supplemental volume. The Case Number in the Florida Supreme Court was No. 68,096.

2. The exact findings read as follows:

1. The crime for which the Defendant is to be sentenced was committed while he was engaged in the commission of or an attempt to commit or flight after committing or at-

tempting to commit the crime of Robbery or Burglary.

2. The crime for which the Defendant is to be sentenced was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody; or

the crime for which the Defendant is to be sentenced was committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of laws; these aggravating circumstances to be treated only as one (1).

3. The crime for which the Defendant is to be sentenced was especially wicked, evil, atro-

mitigating factor of Grossman's age, which was 19 years at the time of the murder, and determined that no mitigating factors existed.

In his direct appeal to the Florida Supreme Court, Grossman raised the following issues for review: (1) denial of motion to sever; (2) denial of motion to suppress evidence; (3) dilution of jury's sentencing responsibility; (4) denial of motion to continue trial; (5) presence of cameras in courtroom and release of videotape to media; (6) denial of request for records on victim and admission of evidence regarding victim's demeanor and prior conduct; (7) admission of evidence regarding prior crimes and bad acts by Grossman; (8) admission of photographs from crime scene and autopsy; (9) admission of physical evidence (clothes); (10) admission of blood spatter testimony; (11) instructions to the jury regarding felony murder; (12) sufficiency of the evidence to support the conviction; (13) denial of defendant's requested jury instruction regarding accomplice testimony; (14) denial of defendant's requested jury instructions regarding penalty phase; (15) sufficiency of the evidence to support findings regarding aggravating and mitigating factors; (16) trial court's failure to file timely sentencing order; (17) denial of motions to dismiss the indictment based on unconstitutionality of death penalty; and (18) trial court's allowing family members to testify as to victim impact evidence. (Ex. B).

The parties filed supplemental briefs pertaining to *Booth v. Maryland,* 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987) (victim impact evidence). (Ex. E—Ex.F). After the Florida Supreme Court affirmed Grossman's conviction and sentence, *Grossman v. State,* 525 So.2d 833 (Fla. 1988), Grossman sought certiorari review in the United States Supreme Court. The United States Supreme Court denied the petition for writ of certiorari. *Grossman v. Florida,* 489 U.S. 1071, 109 S.Ct. 1354, 103 L.Ed.2d 822 (1989). (Ex. H—Ex. K).

Governor Bob Martinez signed a death warrant in Grossman's case on March 8, 1990. The execution was stayed by the Florida Supreme Court on April 5, 1990. On August 13, 1990, Grossman filed his Rule 3.850 Motion to Vacate Judgment of Conviction and Sentence in the state trial court. (Ex. L, V1/58–V2/394);[3] an evidentiary hearing was held May 31—June 2, 1994. (Ex. L, V11/1963–V15/2679), and the state trial court denied the Rule 3.850 motion on October 2, 1995. (Ex. L, V16/2822–2838).

In his appeal from the denial of the Rule 3.850 post-conviction relief, Grossman raised the following issues: (1) ineffectiveness of counsel at the penalty phase; (2) failure to disclose exculpatory, material evidence; (3) witness acted as state agent in violation of defendant's right to counsel; (4) ineffectiveness of counsel at guilt phase; (5) ineffectiveness of counsel for mental health examination; (6) vagueness of "heinous, atrocious or cruel" (HAC) aggravating factor; (7) counsel operating under conflict of interest; (8) right to be present at trial; (9) prosecutorial misconduct; (10) trial court's alleged failure to

---

cious or cruel, in that Peggy Parks, the deceased victim was much smaller than the Defendant, Martin Grossman, and was held down by him in the front seat of her police vehicle and repeatedly struck on or about her head with her metal flashlight, causing innumerable deep lacerations on her head, not causing her to be rendered unconscious; then with the deceased victim, Peggy Parks, in this helpless position, taking her gun, all of which she realized as was reflected by the evidence presented during trial, and using her weapon to end her life.

3. Respondent filed the record of the postconviction proceedings as Exhibit L. Citations to the record will be indicated by volume and page number.

weigh aggravating and mitigating factors. (Ex. M).

The Florida Supreme Court rejected these claims on December 18, 1997, and affirmed the denial of Rule 3.850 relief. *Grossman v. Dugger*, 708 So.2d 249 (Fla. 1997). (Ex. S). That court specifically found Arguments 6 through 10 to be procedurally barred. 708 So.2d at 252, n. 6. In the same opinion, the Florida Supreme Court denied Grossman's state petition for writ of habeas corpus, which had been pending since April 1990. That petition for writ of habeas corpus raised the following issues: (1) ineffectiveness of counsel on appeal; (2) reconsideration of prior *Caldwell v. Mississippi* claim; (3) reconsideration of prior claims challenging adequacy of the sentencing order. (Ex. P).

Grossman then timely filed a federal Petition for Writ of Habeas Corpus on September 18, 1998. That petition was stricken and returned to Grossman. The order striking the petition was modified on February 10, 1999, and Grossman filed a petition in response to that modified order on March 10, 1999. Subsequently, Respondent filed a response to that petition on February 25, 2002, and Grossman filed a reply on March 21, 2002.

Thereafter, on July 22, 2002, this case was administratively closed pending the outcome of two Florida cases that raised *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) issues. (See Doc. No. 25). On August 14, 2003, Grossman filed a successive state habeas petition. (Ex. T). Following the filing of a response and reply, the Florida Supreme Court rejected that petition in a one-sentence order issued May 7, 2004. (Ex. U— Ex. W). Grossman filed a motion for rehearing on May 19, 2004. That motion was denied on July 15, 2004. (Ex. X—Ex. y).

On July 26, 2004, Grossman's federal proceeding was reopened, and Grossman filed the presently pending petition on August 25, 2004. Grossman raises the following grounds for relief, (as stated by Grossman):

### Ground One

THE FAILURE TO SEVER MR. GROSSMAN'S TRIAL FROM THAT OF A NON–TESTIFYING CO–DEFENDANT AFTER IT WAS REQUESTED, WHERE THE CO–DEFENDANT'S CONFESSION AND STATEMENTS WERE ADMITTED AT THEIR JOINT TRIAL, DENIED MR. GROSSMAN THE RIGHT OF CROSS EXAMINATION, IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENT RIGHTS UNDER THE U.S. CONSTITUTION.

### Ground Two

THE PUBLIC DEFENDER'S OFFICE HAD A CONFLICT OF INTEREST IN REPRESENTING THE CO–DEFENDANT, THAYNE TAYLOR, BECAUSE THE OFFICE HAD PREVIOUSLY INTERVIEWED MR. GROSSMAN AND HAD ACCESS TO PRIVILEGED INFORMATION WHICH WAS USED IN THE DEFENSE OF MR. TAYLOR AGAINST MR. GROSSMAN IN A JOINT TRIAL, IN VIOLATION OF THE ATTORNEY CLIENT PRIVILEGE AND THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION.

### Ground Three

THE SENTENCING COURT BY FAILING TO PROPERLY AND TIMELY STATE THE REASONS FOR IMPOSING A SENTENCE OF DEATH, EITHER ORALLY OR IN WRITING, VIOLATED MR. GROSSMAN'S RIGHTS UNDER THE EIGHTH AND FOURTEENTH

AMENDMENTS OF THE U.S. CON-STITUTION.

### Ground Four

REFUSING TO GIVE DEFEN-DANT'S REQUESTED JURY IN-STRUCTIONS, THAT THE TESTI-MONY OF AN ACCOMPLICE SHOULD BE RECEIVED BY THE JURY WITH GREAT CAUTION, AND OTHER SPECIAL PENALTY PHASE INSTRUCTIONS, VIOLATED THE SIXTH, EIGHTH AND FOUR-TEENTH AMENDMENTS TO THE U.S. CONSTITUTION.

### Ground Five

MR. GROSSMAN'S SENTENCING JURY WAS MISLED BY UNCONSTI-TUTIONAL JURY INSTRUCTIONS AND THE STATE'S ARGUMENT THAT DILUTED THEIR SENSE OF RESPONSIBILITY IN THE SEN-TENCING PROCESS IN VIOLATION OF THE EIGHTH AND FOUR-TEENTH AMENDMENTS.

### Ground Six

MR. GROSSMAN WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL ON DIRECT APPEAL FOR FAILING TO RAISE ISSUES WHICH CONSTITUTED CLEARLY REVERSIBLE ERROR IN VIOLA-TION OF THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENT RIGHTS AS GUARANTEED BY THE UNITED STATES CONSTITUTION.

### Ground Seven

THE STATE WITHHELD MATERI-AL AND EXCULPATORY EVI-DENCE IN VIOLATION OF THE SIXTH, EIGHTH, AND FOUR-TEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

### Ground Eight

MR. GROSSMAN WAS DENIED HIS RIGHTS UNDER THE SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WHEN THE STATE KNOWINGLY EX-PLOITED AN OPPORTUNITY TO QUESTION MR. GROSSMAN OUT-SIDE THE PRESENCE OF COUN-SEL, OBTAINING INCRIMINATING STATEMENTS.

### Ground Nine

MR. GROSSMAN WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AT THE PENALTY PHASE OF HIS TRIAL IN VIOLA-TION OF THE SIXTH AND FOUR-TEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

### Ground Ten

MR. GROSSMAN'S DEATH SEN-TENCE WAS TAINTED BY CONSTI-TUTIONALLY INVALID JURY IN-STRUCTIONS ON AGGRAVATING FACTORS, AND IMPROPER APPLI-CATION OF THOSE AGGRAVATING FACTORS IN VIOLATION OF HIS EIGHTH AND FOURTEENTH AMENDMENT RIGHTS.

### Ground Eleven

DENIAL OF MR. GROSSMAN'S MO-TION TO DISMISS THE INDICT-MENT BASED ON THE UNCONSTI-TUTIONALITY, BOTH FACIALLY AND AS APPLIED, OF SECTION 921.141, FLORIDA STATUTES, VIO-LATED THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION.

### Ground Twelve

MR. GROSSMAN'S SIXTH, EIGHTH, AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHTS WERE VIOLATED WHEN THE TRIAL COURT DENIED HIS COUNSEL'S MOTION FOR A CONTINUANCE.

### Ground Thirteen

ADMITTING STATE'S PHOTOGRAPHS THAT WERE GORY AND GRUESOME VIOLATED MR. GROSSMAN'S SIXTH AND FOURTEENTH AMENDMENT RIGHTS TO A FAIR TRIAL.

### Ground Fourteen

THE COURT ERRED IN ALLOWING THE STATE TO INTRODUCE VICTIM IMPACT AND VICTIM CHARACTER EVIDENCE AT TRIAL IN VIOLATION OF MR. GROSSMAN'S SIXTH, EIGHTH, AND FOURTEENTH AMENDMENT RIGHTS.

### Ground Fifteen

FLORIDA'S CAPITAL SENTENCING STATUTE IS UNCONSTITUTIONAL ON ITS FACE AND AS APPLIED IN THIS CASE BECAUSE IT FAILS TO PREVENT THE ARBITRARY AND CAPRICIOUS IMPOSITION OF THE DEATH PENALTY, AND IT VIOLATES DUE PROCESS AND IS CRUEL AND UNUSUAL PUNISHMENT, VIOLATING THE UNITED STATES CONSTITUTION.

### Ground Sixteen

MR. GROSSMAN WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS. TRIAL COUNSEL FAILED TO SUBJECT THE PROSECUTION'S CASE TO MEANINGFUL ADVERSARIAL TESTING IN THE GUILT PHASE OF THE DEFENDANT'S TRIAL BY CONCEDING GUILT WITHOUT CONSULTATION.

### Ground Seventeen

MR. GROSSMAN WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AT THE PENALTY PHASE OF HIS TRIAL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND CONTRARY TO THE HOLDING IN *WIGGINS V. SMITH,* 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003).

### Ground Eighteen

THE FLORIDA DEATH SENTENCING STATUTE AS APPLIED IS UNCONSTITUTIONAL UNDER THE SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION UNDER THE HOLDING IN *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).

## STANDARDS OF REVIEW

■ Because Grossman filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *Penry v. Johnson,* 532 U.S. 782, 792, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001); *Henderson v. Campbell,* 353 F.3d 880, 889–90 (11th Cir.2003); *Maharaj v. Sec'y for Dept. of Corrections,* 304 F.3d 1345, 1346 (11th Cir.2002). The AEDPA "establishes a more deferential standard of review of state habeas judgments," *Fugate v. Head,* 261 F.3d 1206, 1214 (11th Cir.2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v.*

**1248**

Cone, 535 U.S. 685, 693, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); see, Bell v. Cone, — U.S. —, 125 S.Ct. 847, 160 L.Ed.2d 881, 2005 WL 123827 (U.S. Jan. 24, 2005) (habeas court's standard for evaluating state-court ruling is highly deferential, which demands that state-court decisions be given benefit of the doubt)[citing 28 U.S.C.A. § 2254(d) ] . AEDPA is relevant to a review of this Petition.

### A.

■ A § 2254 application cannot be granted unless a petitioner "has exhausted the remedies available in the courts of the State; ..." 28 U.S.C. 2254(b)(1)(A); Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir.1998). "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." O'Sullivan v. Boerckel, 526 U.S. 838, 842, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).[4] See also, Henderson v. Campbell, 353 F.3d at 891 ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.")(quoting Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir.2001)); Snowden v. Singletary, 135 F.3d at 735 ("Exhaustion of state remedies requires that the state prisoner fairly presen[t] federal claims to the state courts in

order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights") (quoting Duncan v. Henry, 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995)).

■ Exhaustion of state court remedies generally requires a petitioner to pursue discretionary appellate review. " '[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process, including review by the state's court of last resort, even if review in that court is discretionary." Pruitt v. Jones, 348 F.3d 1355, 1358–59 (11th Cir.2003)(citing O'Sullivan, 526 U.S. at 845, 119 S.Ct. 1728). This is required even if the state Supreme Court rarely grants such petitions and usually answers only questions of broad significance. O'Sullivan, 526 U.S. at 845–46, 119 S.Ct. 1728.

■■ "The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine." Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir.2001). Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applica-

**4.** O'Sullivan v. Boerckel, 526 U.S. at 845, 119 S.Ct. 1728, suggests a shift by the United States Supreme Court with regard to the terminology used in discussing exhaustion principles. The majority of the [O'Sullivan] Court concluded that an issue that was not properly presented to the state court, and which can no longer be litigated under state procedural rules, did not satisfy the exhaustion requirement, and is procedurally barred from federal review. 526 U.S. at 839–840, 848, 119 S.Ct. 1728. As noted by the dissenting opinion, prior case law characterized issues for which no vehicle existed for state court litigation to be exhausted but procedur-

ally barred. 526 U.S. at 850, 852, 119 S.Ct. 1728; see Coleman v. Thompson, 501 U.S. 722, 732, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); Engle v. Isaac, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); Picard v. Connor, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).

There are no unexhausted claims in Grossman's petition that can still be litigated in state court. If a claim is procedurally barred, federal review is precluded by virtue of that bar, and the exhaustion, or lack of exhaustion, is irrelevant. O'Sullivan, 526 U.S. at 848, 119 S.Ct. 1728.

ble." *Smith v. Jones*, 256 F.3d at 1138. "The doctrine of procedural default was developed as a means of ensuring that federal habeas petitioners first seek relief in accordance with established state procedures." *Henderson v. Campbell*, 353 F.3d at 891 (quoting *Judd v. Haley*, 250 F.3d at 1313).

▇ As stated above, a procedural default will only be excused in two narrow circumstances. First, petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the default. "Cause" ordinarily requires petitioner to demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court. *Henderson v. Campbell*, 353 F.3d at 892; *Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir.1995). To show "'prejudice," Grossman must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his factual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Hollis v. Davis*, 941 F.2d 1471, 1480 (11th Cir.1991) (quoting *United States v. Frady*, 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)). Grossman must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson v. Campbell*, 353 F.3d at 892.

▇ Second, a petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if such review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000); *Henderson v. Campbell*, 353 F.3d at 892. This exception is only available "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent."

*Henderson v. Campbell*, 353 F.3d at 892. The fundamental miscarriage of justice exception concerns a petitioner's "actual" innocence rather than his "legal" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (2001) (citing *Calderon v. Thompson*, 523 U.S. 538, 559, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998); *Murray v. Carrier*, 477 U.S. 478, 495–96, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) (explaining that a "fundamental miscarriage of justice" occurs "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent")). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). In addition, " '[t]o be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon*, 523 U.S. at 559, 118 S.Ct. 1489 (quoting *Schlup*, 513 U.S. at 324, 115 S.Ct. 851) (explaining that "[g]iven the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected") (internal quotation marks omitted).

▇ The *Schlup* Court stated that the petitioner must show constitutional error coupled with "new reliable evidence— whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324, 115 S.Ct. 851. This fundamental miscarriage of justice exception is not available unless "the petitioner shows, as a factual matter, that he did not commit the crime of conviction." *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir.1995) (denying certificate of probable cause)(footnote omitted).

### No Presumption that State Court Ignored Its Procedural Rules

Finally, this Court cannot presume that a Florida court ignores its own procedural rules when the Court issues only a one-sentence denial of relief, which is essentially a summary dismissal. Such a ruling does not suggest that the state court resolved the issue on the federal claim presented. *See Coleman,* 501 U.S. 722, 735–36, 111 S.Ct. 2546 (1991); *Kight v. Singletary,* 50 F.3d 1539, 1544–1545 (11th Cir.1995) (applying procedural bar where state court's summary dismissal did not explain basis for ruling); *Tower v. Phillips,* 7 F.3d 206, 209 (11th Cir.1993) (applying bar where state court did not rule on claims presented).

### B.

Pursuant to AEDPA, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application, of clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Price v. Vincent,* 538 U.S. 634, 123 S.Ct. 1848, 1852–53, 155 L.Ed.2d 877 (2003); *Clark v. Crosby,* 335 F.3d 1303, 1308 (11th Cir.2003); *Harrell v. Butterworth,* 251 F.3d 926, 930 (11th Cir. 2001). "Clearly established Federal law" is the governing legal principle, not the dicta, set forth by the United States Supreme Court at the time the state court issues its decision. *Lockyer v. Andrade,* 538 U.S. 63, 71–72, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). Where no Supreme Court precedent is on point, or the precedent is ambiguous, it cannot be said that the state court's conclusion is contrary to clearly established governing federal law. *Mitchell v. Esparza,* 540 U.S. 12, 124 S.Ct. 7, 10, 157 L.Ed.2d 263 (2003); *Clark v. Crosby,* 335 F.3d at 1308–10; *Washington v. Crosby,* 324 F.3d 1263, 1265 (11th Cir. 2003).

A state court decision is "contrary to" the Supreme Court's clearly established precedent within the meaning of § 2254(d)(1) only if the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law, or if the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. *Mitchell v. Esparza,* 124 S.Ct. at 10 (citing *Williams v. Taylor,* 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). *See also Price v. Vincent,* 123 S.Ct. at 1853; *Lockyer v. Andrade,* 538 U.S. at 75–77, 123 S.Ct. 1166. A state court does not have to cite the Supreme Court precedent, or even be aware of it, so long as neither its reasoning nor its result contradicts Supreme Court precedent. *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002); *Mitchell v. Esparza,* 124 S.Ct. at 10; *Parker v. Secy. of Dept. of Corrections,* 331 F.3d 764, 775–76 (11th Cir.2003).

A state court decision involves an unreasonable application of Supreme Court precedent if the state court identifies the correct governing legal rule from Supreme Court cases but unreasonably applies it to the facts of the particular inmate's case; or if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply; or unreasonably refuses to extend that principle to a new context where it should apply. *Bottoson v. Moore,* 234 F.3d 526, 531 (11th Cir.2000). The "unreasonable application"

inquiry requires the state court decision to be more than incorrect or erroneous; it must be objectively unreasonable. *Lockyer v. Andrade,* 538 U.S. at 75–77, 123 S.Ct. 1166; *Williams,* 529 U.S. at 409–10; *Penry v. Johnson,* 532 U.S. at 791–792, 121 S.Ct. 1910; *Woodford v. Visciotti* 537 U.S. 19, 25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002); *Mitchell v. Esparza,* 124 S.Ct. at 11–12; *Price v. Vincent,* 123 S.Ct. at 1853.

Whether a state court's decision was unreasonable must be assessed in light of the record the court had before it. See *Holland v. Jackson,* —— U.S. ——, —— ——, 124 S.Ct. 2736, 2737–2738, 159 L.Ed.2d 683 (2004) (citing *Yarborough v. Gentry,* 540 U.S. 1, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003)) (per curiam) (denying relief where state court's application of federal law was supported by the record); *Miller–El v. Cockrell,* 537 U.S. 322, 348, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (reasonableness of state court's factual finding assessed "in light of the record before the court"); *cf. Bell v. Cone,* 535 U.S. at 697, n. 4, 122 S.Ct. 1843 (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

### C.

 A factual finding by a state court is presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Henderson,* 353 F.3d at 890–91. The statutory presumption of correctness applies only to findings of fact made by the state court, not to mixed determinations of law and fact. *Parker v. Head,* 244 F.3d 831, 836 (11th Cir.2001).

A petitioner who "failed to develop" the factual basis for a claim while in state court as a result of the petitioner's lack of diligence is barred from doing so in federal court (subject to the very narrow exceptions set out in § 2254(e)(2)). *Williams v. Taylor,* 529 U.S. at 433–34, 120 S.Ct. 1479.

### D.

### Ineffective Assistance of Counsel Claims

 In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court established a two-part test for determining whether a convicted person is entitled to habeas relief on the ground that his or her counsel rendered ineffective assistance: 1) whether counsel's representation was deficient, i.e., "fell below an objective standard of reasonableness"; and 2) whether the deficient performance prejudiced the defendant, i.e., there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 687–88, 104 S.Ct. 2052; *see also, Wiggins v. Smith,* 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003); *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Roe v. Flores–Ortega,* 528 U.S. 470, 477, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000) (quoting *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052). This judicial scrutiny is "highly deferential." *Id.* at 477, 104 S.Ct. 2052. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland,* 466 U.S. at 689–90, 104 S.Ct. 2052; *Bell v. Cone,* 535 U.S. 685, 698, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002). Because the ultimate resolution of the ineffective assistance of counsel claims are mixed questions of law and fact, *Thompson v. Haley,* 255 F.3d 1292, 1297 (11th Cir.2001); *Meeks v. Moore,* 216 F.3d 951, 959 (11th Cir.2000), the presumption of correctness

contained in § 2254(e)(1) does not apply to this determination. *Parker v. Head,* 244 F.3d at 835–837. "[T]he *Strickland* test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims." *Williams,* 529 U.S. at 391, 120 S.Ct. 1495.

"To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Chandler v. United States,* 218 F.3d 1305, 1313 (11th Cir.2000) (en banc) (quoting *Burger v. Kemp,* 483 U.S. 776, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987)). "Therefore, the cases in which habeas petitioners can properly prevail an the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant,* 13 F.3d 384, 386 (11th Cir.), *cert. denied,* 513 U.S. 899, 115 S.Ct. 255, 130 L.Ed.2d 175 (1994).

▪ The inquiry into whether a lawyer has provided effective assistance is an objective one: a petitioner must establish that no objectively competent lawyer would have taken the action that his lawyer did take. *See Chandler,* 218 F.3d at 1315. An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption of effective representation. Where the record is incomplete or unclear about counsel's actions, it will be presumed that he did what he should have done, and that he exercised reasonable professional judgment. *Chandler,* 218 F.3d, at 1314 n. 15.

### E.

▪ Generally, claims alleging a violation of state law are not subject to review in federal habeas proceedings. *Pulley v. Harris,* 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984); *McCullough v. Singletary,* 967 F.2d 530, 535–36 (11th Cir.

1992). To the extent that a federal question is raised in the federal habeas petition, the federal question was not exhausted in state court if the issue were raised only as a state law claim in state court. *Anderson v. Harless,* 459 U.S. 4, 6–8, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982).

▪ Finally, in the event constitutional error is found in a habeas proceeding, the relevant harmless error standard is set forth in *Brecht v. Abrahamson,* 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). The test is "less onerous" then the harmless error standard enunciated in *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). "The test is whether the error had substantial and injurious effect or influence in determining the jury's verdict. Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Brecht,* 507 U.S. at 637, 113 S.Ct. 1710. Although no constitutional error has occurred in Grossman's case, any possible error would clearly be harmless beyond any reasonable doubt based on the facts and the record herein.

### DISCUSSION

#### Ground One

▪ Grossman's initial contention asserts that his constitutional rights were violated when the trial court denied his motion to sever his trial from that of his codefendant, Thayne Taylor. Grossman raised this claim on direct appeal. (Ex. B, 37–46). It was denied on the merits by the Florida Supreme Court, applying *Cruz v. New York,* 481 U.S. 186, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987). *See Grossman,* 525 So.2d at 838–39.

In support of his claim, Grossman asserts that the trial court's denial of his motion to sever violated his constitutional right to confrontation because Taylor's confession was admitted into evidence, and the trial court's instruction for the jury only to consider the confession with regard to Taylor's guilt was insufficient to protect Grossman's constitutional rights.

In rejecting this claim, the Florida Supreme Court related the relevant facts and summarized the applicable law. The court acknowledged that *Cruz,* which had not been decided at the time of Grossman's trial, compelled a finding of legal error in the admission of Taylor's confession. However, the court determined that the error was harmless on the facts and circumstances presented. *Grossman,* 525 So.2d at 838–39.

The claim asserted in Grossman's federal habeas petition is refuted by the state courts' express factual findings. Specifically, the Florida Supreme Court noted that, "Taylor's statement interlocks with and is fully consistent in all significant aspects with all three statements that appellant made to Hancock, Allan, and Brewer and which were directly admissible against appellant." *Grossman,* 525 So.2d at 838–39. The court also noted that Grossman's statements to all three of these witnesses demonstrated that Grossman was the initiator and triggerman while Taylor's role was "clearly subordinate;" and that the witnesses were able to identify Grossman as the person who narrated the critical elements of the murder. *Id.*

Although Grossman alleges that, "contrary to the [state courts'] belief, Mr. Grossman's and co-defendant Taylor's confessions were not 'interlocking,'" (Memorandum, p. 3), he does not explain this assertion or identify any evidence to support it. Thus, he has failed to overcome the state courts' factual findings.

Grossman similarly has no basis to suggest that the state courts' legal conclusions were wrong. The Florida Supreme Court correctly identified *Cruz v. New York,* 481 U.S. 186, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987), as the applicable federal law at the time of Grossman's direct appeal. Although Grossman does not cite *Cruz,* he relies on the earlier cases of *Parker v. Randolph,* 442 U.S. 62, 99 S.Ct. 2132, 60 L.Ed.2d 713 (1979), and *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), which were also identified by the Florida Supreme Court as controlling, but modified by *Cruz.* Because the state court correctly identified the appropriate federal law, the decision denying his claim cannot be deemed "contrary to" established federal law. *Williams,* 529 U.S. at 406, 120 S.Ct. 1495.

Nor has Grossman shown the application of the *Cruz* principles to be objectively unreasonable. In fact, the state court clearly analyzed the consequences of failing to sever Grossman's trial from Taylor's trial and the admission of Taylor's statements under the relevant considerations outlined in *Cruz.* The treatment of this issue in state court was fully consistent with the holding of *Cruz,* and no basis for the granting of habeas relief has been offered in this claim.

Grossman's characterization of Taylor as the "linch-pin" of the state's case, providing testimony crucial to his conviction, is mistaken. Taylor did not testify at Grossman's trial. Although Taylor's statements were admitted for the jury's consideration as to Taylor's guilt only, Taylor's statements were fully consistent with Grossman's statements, which were properly admitted against Grossman.

Brian Hancock testified Grossman told Hancock that Grossman followed Peggy Park to her vehicle, hit her repeatedly with her flashlight, wrested her gun away

and then shot her at point blank range. (Ex. A, V11–12/1957–2036). Brian Allan's testimony demonstrated that Grossman gave Allan the same account. (Ex. A, V12/2038–2070). Grossman indicated to Hancock and Allan that Grossman was under arrest and Officer Park had told him that he was going back to prison; and Grossman beat and shot Park in order to avoid going to jail. (Ex. A, V11/1966–68, V12/2036, 2046).

Grossman admitted the same motivation in statements to fellow inmate Brewer. (Ex. A, V12/2084–2110). Grossman did not present a defense that was inconsistent with Taylor's statements. On these facts, the Florida Supreme Court's finding of harmless error with regard to the admission of Taylor's statements is a reasonable application of established federal law.

■ Although the Florida Supreme Court properly analyzed any harm attributable to the admission of Taylor's statements under *Cruz,* this Court's analysis of any alleged constitutional error is more appropriate under *Brecht v. Abrahamson,* 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). Under *Brecht,* constitutional error will be considered harmless in a habeas proceeding *unless* the error had substantial and injurious effect or influence on the verdict or sentence. The facts of this case demonstrate that Grossman was not prejudiced if there were any constitutional error in this issue; he has not even attempted to demonstrate otherwise.

Grossman has failed to show that the state courts' rejection of this claim relied on erroneous facts, or that the state courts applied established federal law in a manner that was contrary to or was objectively unreasonable in light of United States Su-

preme Court precedent. Therefore, no habeas relief is warranted on ground one.

### Ground Two

Grossman's next claim concerns a purported conflict of interest arising when the public defender initially appointed to represent Grossman ultimately represented his codefendant, Thayne Taylor, in their joint trial. Grossman raised this issue as claim seven in Grossman's postconviction appeal. The claim was specifically rejected as procedurally barred under state law. *Grossman,* 708 So.2d at 252, n. 6.

■ In Florida, issues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack. This Circuit has long recognized this aspect of Florida law. *Sullivan v. Wainwright,* 695 F.2d 1306, 1310 (11th Cir.) (claims that could have been or should have been reserved at trial and then raised on direct appeal and were not are procedurally barred), *cert. denied,* 464 U.S. 922, 104 S.Ct. 290, 78 L.Ed.2d 266 (1983).

The Florida Supreme Court did not address the merits of Grossman's Rule 3.850 claim regarding this conflict issue. The state court expressly applied Florida's procedural rules and the decision rests on independent and adequate grounds barring federal habeas corpus review.[5]

■ When a state court has declined to address federal claims because the defendant failed to meet a state procedural requirement, the independent and adequate state grounds doctrine applies to bar federal habeas review. The federal court will not review a question of federal law decided by a state court if the decision of that

---

5. Grossman's reliance on *Henry v. State of Miss.,* 379 U.S. 443, 447–448, 85 S.Ct. 564, 13 L.Ed.2d 408 for the proposition that this Court must consider any procedurally barred claims because "the issue of federal bar itself is a federal issue" is not persuasive. See Reply, Doc. No. 59, pp. 2, 3. If Grossman is claiming that *Henry* requires this Court to determine whether or not a claim is procedurally barred, this Court has done so.

court rests on a state law ground that is independent of the federal question and adequate to support the judgment. *See Eagle v. Linahan,* 279 F.3d 926 (11th Cir. 2001) (citing *Coleman v. Thompson,* 501 U.S. at 729, 111 S.Ct. 2546). This rule applies whether the state law ground is substantive or procedural. *Id.*

In an attempt to overcome the procedural default, Grossman, in his reply, relies on *Upshaw v. Singletary,* 70 F.3d 576, 580 (11th Cir.1995) for the proposition that the state does not consistently apply the rule that an issue cannot be raised on collateral attack if the issue could, or should have been, raised on direct appeal. However, as stated above, the Eleventh Circuit has long recognized this aspect of Florida law. *Sullivan v. Wainwright,* 695 F.2d at 1310. Florida has consistently applied this rule.

Grossman has not demonstrated valid cause to excuse his default of ground two. Nor has Grossman shown actual prejudice or alleged facts to make a colorable showing of actual innocence. Grossman, therefore, has failed to overcome his procedural default under *Wainwright v. Sykes.*

Even if the claim were not procedurally barred, this claim is without merit. Grossman's conflict claim does not involve the attorney who actually represented Grossman at trial; rather, Grossman alleges that he was denied a fair trial due to his *codefendant's* representation by an assistant public defender, Anthony Rondolino, who originally was appointed to represent Grossman. Rondolino withdrew from his appointment to represent Grossman after five days, due to the adverse interests between Grossman and Taylor.

Grossman asserts that, because Rondolino had access to confidential information from Grossman prior to Rondolino's withdrawing from his case, Rondolino's subsequent representation of Taylor created an actual conflict of interest that was constitutionally impermissible.

To obtain habeas relief based on an improper conflict of interest, Grossman would have to show an actual conflict and to demonstrate that such conflict adversely affected his attorney's performance. *Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) (a mere possibility of conflict of interest does not rise to the level of a Sixth Amendment violation); *Mills v. Singletary,* 161 F.3d 1273, 1287 (11th Cir.1998). In *Mills,* the Eleventh Circuit discussed the distinction between an actual and a potential conflict of interest based on an initial dual representation of adverse codefendants. An actual conflict can only be found when a petitioner "can point to specific instances in the record to suggest an actual conflict or impairment of their interests." 161 F.3d at 1287 (quoting *Smith v. White,* 815 F.2d 1401, 1404–05 (11th Cir.), *cert. denied,* 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987)).

In this case, the only instances in the record Grossman has cited to support his claim of an actual conflict that affected Rondolino's performance are found at Ex. A, V11/1821, where Rondolino took a position adverse to Grossman during opening argument; Ex. A, V13/2283, 2288, where Rondolino stipulated that Taylor's statement to law enforcement was voluntary; Ex. A, V13/2304–05, where Rondolino argued against cross-examination on Taylor's statement; and Ex. A, V14/2489, 2490, where Rondolino vouched for state witnesses. No adverse interests existed at these times because Rondolino did not, in any way, represent Grossman at trial.

To the extent that Grossman asserts the conflict premised on Rondolino's access to confidential information, none of these instances suggest that Rondolino's actions were, in any way, affected by the use or

disclosure of any confidential information. Grossman has not identified any prejudice to Grossman that could have resulted from Rondolino's representation of Taylor. His assertion that Rondolino had access to confidential information is meaningless, since no such information is specifically identified and no disclosure or damaging use of any privileged information has been alleged. None of Rondolino's actions cited above were occasioned by the prior relationship between Grossman and Rondolino. The mere fact that Rondolino adopted a reasonable strategy for Taylor that attempted to shift the blame to Grossman is not sufficient to substantiate the claim that Rondolino rendered ineffective assistance to Grossman. And even if Rondolino violated an unsubstantiated, continuing "duty of loyalty" to Grossman as a former client, mere improper or unethical behavior does not automatically constitute ineffective assistance of counsel.

 Grossman has failed to demonstrate that either his trial counsel Tom McCoun, or Taylor's attorney, Rondolino, performed in a manner adversely affected by Rondolino's prior relationship with Grossman. The *Cuyler* Court noted that, "until a defendant shows that *his* counsel *actively represented* conflicting interests," he has not established a violation of the Sixth Amendment. 446 U.S. at 348, 100 S.Ct. 1708 (emphasis added). Even if Rondolino had a "continuing duty of loyalty" to Grossman at the time of trial, he was no longer "actively representing" Grossman. Any possible constitutional error in this issue would be harmless under *Brecht.*

Finally, Grossman fails to meet his burden of showing under the AEDPA standard that the state decision resulted in an unreasonable application of established Supreme Court precedent.

Ground two does not warrant habeas corpus relief.

### Ground Three

 Grossman contends that his constitutional rights were violated by the trial court's failure to file a proper sentencing order. Grossman raised this claim in his direct appeal. (Ex. B/84–85).[6] In state court, Grossman never alleged a federal constitutional violation with regard to the timeliness of his sentencing order. He relied only on state cases and did not even summarily refer to the federal constitution. Thus, to the extent any federal constitutional question is implied in Grossman's present habeas petition, that question has not been exhausted in state court. *Picard v. Connor,* 404 U.S. 270, 277–78, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971) (noting both the operative facts and the controlling legal principles of a constitutional claim must be submitted to the state court).

In his federal petition, Grossman challenges this alleged legal error as a matter of state law. This fact is apparent from the claim in his Memorandum that "[t]he Circuit Court and the Florida Supreme Court failed to follow the then existing Laws of the State of Florida." (Memorandum, p. 10). Since Grossman has not presented a federal constitutional question, this Court has no basis to review this issue. *Pulley,* 465 U.S. at 41, 104 S.Ct. 871; *McCullough,* 967 F.2d at 535–36; *Carrizales v. Wainwright,* 699 F.2d 1053, 1054 (11th Cir.1983)(an "issue involv[ing] a pure question of state law" and issues of

---

**6.** Grossman's petition asserts that this issue was also presented in his postconviction appeal, where he alleged that the circuit court failed to properly weigh the mitigators and aggravators (Amended Petition, pp. 12–13).

To the extent that Grossman is challenging the trial court's weighing process, this issue is procedurally barred. The Florida Supreme Court expressly found this claim barred in the postconviction appeal. 708 So.2d at 252 n. 6.

state law do not generally raise issues of constitutional magnitude).

Although Grossman's claim asserts that "[t]he sentencing court by failing to properly and timely state the reasons for imposing a sentence of death, either orally or in writing, violated Mr. Grossman's rights under the Eighth and Fourteenth Amendments of the U.S. Constitution," Grossman has not identified any established federal law requiring that a timely written order supporting the imposition of the death penalty be entered. Furthermore, his current allegation that the facts establish "a critical violation of due process and equal protection of the laws" (Petition, p. 12) has never been presented to any state court. His claim is procedurally barred.

In addition, this claim is without merit. This issue was decided adversely to Grossman as a matter of state law in his state direct appeal. *Grossman*, 525 So.2d at 841. Grossman's suggestion that the Florida Supreme Court treated him in a different way from the defendant in *Van Royal v. State*, 497 So.2d 625 (Fla.1986), is belied by that Florida Supreme Court's properly finding *Van Royal* to be factually distinguishable.

 Grossman's assertion that the state trial court acted without jurisdiction is incorrect since, as the Florida Supreme Court noted, Florida Rule of Appellate Procedure 9.140(b)(4) conferred concurrent jurisdiction on the circuit court for preparation of the appellate record. Grossman's claim that the imposition of his sentence failed to comport with the Eighth Amendment is refuted by the trial court's order delineating the judge's findings with regard to the aggravating and mitigating circumstances. (Ex. A, V2/289–90). *See generally Parker v. Dugger*, 498 U.S. 308, 317–18, 111 S.Ct. 731, 112 L.Ed.2d 812 (1991) (discussing relevant Florida law with regard to death penalty sentencing orders). The United States Constitution does not require a sentencer to accept, only to consider, relevant mitigating circumstances, and a state is not required to ascribe any specific weight to any particular evidence considered by the sentencer. *Harris v. Alabama*, 513 U.S. 504, 512, 115 S.Ct. 1031, 130 L.Ed.2d 1004 (1995); *Blystone v. Pennsylvania*, 494 U.S. 299, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990). Thus, Grossman's death sentence was imposed in accordance with all applicable constitutional principles.

 The Florida Supreme Court is the final arbiter of Florida law; federal courts must respect that law absent a constitutional violation. *Breedlove v. Moore*, 279 F.3d 952, at 963 (11th Cir.2002). A federal habeas court may not issue the writ on the basis of a state's interpretation of its own laws and rules, absent extreme circumstances. *Pulley*, 465 U.S. at 42, 104 S.Ct. 871. No such circumstances have been demonstrated in this case.

 Grossman has not identified any erroneous factual findings relied upon the by state courts in denying relief. He has not identified any prevailing federal precedent from the United States Supreme Court that was ignored or misapplied by the state courts' resolution of this claim. Therefore, ground three is facially insufficient and does not compel any finding of constitutional error.

Any possible constitutional error in this issue would be harmless under *Brecht.* Habeas relief is not warranted based on the alleged inadequacy or untimeliness of the trial court's sentencing order.

### Ground Four

Grossman alleges that the trial judge's refusal to give jury instructions requested by the defense warrants federal habeas relief. Grossman raised this claim on direct appeal as two distinct issues: in Question 8, Grossman challenged the trial court's

refusal to give an instruction with regard to accomplice testimony; in Question 14, he challenged the denial of several requested penalty phase special instructions. (Ex. B, pp. 73 –79).

### Accomplice Instruction

 Grossman did not allege a violation of any federal right, and no federal constitutional issue was fairly presented to the state court regarding his challenge to the refusal to give an instruction with regard to accomplice testimony. Therefore, Grossman's claim challenging the denial of the requested instruction on accomplice testimony is unexhausted and now procedurally barred to the extent any federal constitutional issue is implied. *O'Sullivan*, 526 U.S. at 848, 119 S.Ct. 1728; *Turner v. Crosby*, 339 F.3d 1247, 1281 (2003).

 Furthermore, this claim is without merit. As to the failure to instruct the jury on weighing accomplice testimony, relief is precluded by the Florida Supreme Court's express finding that Hancock was not an accomplice. *Grossman*, 525 So.2d at 837. Although Taylor was an accomplice, the jury was instructed not to consider his statements in assessing Grossman's guilt. (Ex.A, V15/2548). Thus, this claim fails factually.

 The claim fails legally even if Hancock is presumed to be an accomplice. Grossman does not cite any existing federal law requiring the giving of the cautionary accomplice instruction. His reliance on *United States v. Beard*, 761 F.2d 1477 (11th Cir.1985) is misplaced because the prevailing federal law for habeas purposes must emanate from the United States Supreme Court. *See Putman*, 268 F.3d at

1241. Grossman's reliance on *Beard* cannot be interpreted as reasonably offering any federal constitutional basis for this claim. The absence of a federal constitutional argument on the aspect of Grossman's issue relating to the accomplice instruction precludes review of that claim in this Court. This claim does not involve any reasonable factual dispute,[7] and Grossman has not identified any existing federal law that was contrary to or unreasonably applied by the Florida Supreme Court's in its rejection of Grossman's accomplice instruction claim.

### Penalty Phase Jury Instructions

 Similarly, Grossman's assertion that the federal constitution required additional penalty phase jury instructions be given has no basis in law. The Florida Supreme Court expressly found that the standard jury instructions that were given at Grossman's trial adequately addressed his concerns. *Grossman*, 525 So.2d at 837. Grossman has not identified any United States Supreme Court precedent that required giving more expansive penalty phase instructions. In *Boyde v. California*, 494 U.S. 370, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990), the Court held that the proper legal standard for reviewing a claim that a jury instruction was ambiguous and therefore subject to erroneous interpretation was "whether there was a reasonable likelihood that the jury applied the instruction in a way that prevented consideration of constitutionally relevant evidence." 494 U.S. at 380, 110 S.Ct. 1190. Grossman has not met that standard and

---

7. Although not relevant to the legal claim presented herein, it should be noted that Grossman's factual allegation that Taylor's statements offered "the only evidence" describing how Park's murder occurred and identifying Grossman as the triggerman (Amended Petition, p. 14; Memorandum, p.

13), is incorrect. Testimony admitted at trial clearly established that Grossman himself admitted his role as triggerman and recounted the facts of the murder to several state witnesses. (Ex. A, V11/702–V12/781, V12/781–813; V12/827–858).

has not shown constitutional error related to this claim.

Finally, on the facts of this case, no relief could be warranted because any possible impropriety in the denial of the requested jury instructions would be harmless beyond any reasonable doubt. Under *Brecht*, constitutional error will be considered harmless in a habeas proceeding unless the error had substantial and injurious effect or influence in determining the sentence. Grossman makes no attempt to establish prejudice with regard to the trial court's failure to provide more expansive penalty phase instructions. In light of the strong and significant aggravating factors and the lack of mitigation, the jury's unanimous recommendation, and the egregious facts of this case, there is no possibility that any additional penalty phase instructions could have affected Grossman's sentence.

Grossman has failed to demonstrate that the state courts' rejection of this claim relied on erroneous facts, or applied established federal law in a manner that was contrary to or objectively unreasonable in light of United States Supreme Court precedent. Therefore, no habeas relief is warranted on this claim.

### Ground Five

██ Grossman asserts a violation of *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). He claims that the sentencing jury was misled by unconstitutional jury instructions and the state's argument that diluted the jury's sense of responsibility in the sentencing

process in violation of the Eighth and Fourteenth Amendments.[8]

Grossman raised this claim on direct appeal. (Ex. B, 50–54). The Florida Supreme Court denied the claim on the merits. *See Grossman*, 525 So.2d at 839–40. The claim was reconsidered and again rejected in the denial of Grossman's state habeas petition. (Claim II, Ex. P, 56–59); *Grossman*, 708 So.2d at 253.

The Florida Supreme Court identified the controlling federal law as *Caldwell*, so the rejection of this claim cannot be found to be contrary to clearly established federal law. As subsequent cases demonstrate, the Florida Supreme Court's application of *Caldwell* in this case was plainly objectively reasonable. In order to establish constitutional error under *Caldwell*, a petitioner must show that the comments or instructions to the jury "improperly described the role assigned to the jury by local law." *Romano v. Oklahoma*, 512 U.S. 1, 9, 114 S.Ct. 2004, 129 L.Ed.2d 1 (1994). "The infirmity identified in *Caldwell* is simply absent" in a case where "the jury was not affirmatively misled regarding its role in the sentencing process." *Romano*, 512 U.S. at 9, 114 S.Ct. 2004; *Davis v. Singletary*, 119 F.3d 1471, 1482 (11th Cir.1997).

██ The Eleventh Circuit has repeatedly recognized, as did the Florida Supreme Court, that comments describing the jury's role in Florida as that of making an advisory recommendation and that of the judge as being the final sentencing authority do not constitute *Caldwell* error.

---

**8.** Grossman's memorandum of law also cites to *Hitchcock v. Dugger*, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987), for the proposition that death sentencing jury instruction issues are governed by the Eighth Amendment. (Memorandum, p. 14). However, he does not allege a violation of the specific principle at issue in *Hitchcock*, i.e., instructions which precluded the sentencer

from considering nonstatutory mitigating circumstances. To the extent that such claim is broadly implied by his citation to *Hitchcock*, he has never alleged such error in state court and therefore it cannot be considered in this habeas proceeding. *O'Sullivan*, 526 U.S. at 848, 119 S.Ct. 1728; *Turner*, 339 F.3d at 1281.

The Florida Supreme Court has routinely rejected this claim on comments similar to those challenged in Grossman's case. *Johnston v. Singletary*, 162 F.3d 630 (11th Cir.1998); *Provenzano v. Singletary*, 148 F.3d 1327, 1334 (11th Cir.1998); *Davis v. Singletary*, 119 F.3d at 1482.

Grossman is not entitled to relief because a review of the trial proceedings reveals that the jury was never misled regarding its proper role under Florida law. *Harich v. Dugger*, 844 F.2d 1464 (11th Cir.1988) (en banc). Pursuant to *Harich*, "emphasizing the 'advisory' role of the jury, or the fact that the jury is making a 'recommendation' to the judge, does not support the *Caldwell* claim. Such statements are neither inaccurate not misleading." 844 F.2d at 1473–74. Grossman has failed to demonstrate that the state courts' rejection of this claim relied on erroneous facts, or that the state courts applied established federal law in a manner that was contrary to or objectively unreasonable in light of United States Supreme Court precedent. In addition, any possible constitutional error in this issue would clearly be harmless under *Brecht*. Therefore, no habeas relief is warranted on ground five.

### Ground Six

■■■ Grossman alleges that his appellate attorney rendered ineffective assistance of counsel. Grossman has identified four issues that he asserts should have been raised in his direct appeal: 1) the written sentencing order was insufficient for failing to specify the facts supporting the trial judge's findings with regard to aggravating and mitigating factors; 2) Florida's capital sentencing statute is unconstitutional because the burden is on the defendant to establish that life is the appropriate sentence; 3) the jury instruction provided on the "heinous, atrocious or cruel" aggravating circumstance was unconstitutionally vague; and 4) the trial court erred by failing to hold a hearing pursuant to *Richardson v. State*, 246 So.2d 771 (Fla. 1971), due to an alleged discovery violation by the state.

Grossman raised these claims in his initial state habeas petition. (*See* Ex. P, pp. 5–17, 22–24, 28–30, 42–47.) The Florida Supreme Court rejected Grossman's claim of ineffective assistance of appellate counsel, making several findings:

Grossman claims as his first issue in his habeas petition that appellate counsel provided ineffective representation in a number of ways. (A) He claims that appellate counsel should have argued that the trial court's sentencing order was insufficiently specific. A review of the order, however, shows that it comports with the law that was in effect at that time. (B) He asserts that appellate counsel should have claimed prosecutorial misconduct. This issue was not preserved since trial counsel failed to object to the allegedly improper statements. (C) He asserts that appellate counsel should have argued more convincingly that Florida's capital sentencing statute is unconstitutional. This claim is procedurally barred—it was raised on direct appeal. (D) He asserts that appellate counsel should have argued that the death penalty is imposed in an arbitrary fashion. This claim is procedurally barred—it was raised on direct appeal. (E) He claims that appellate counsel should have argued that the HAC instruction was vague. This issue was not preserved. Although trial counsel objected on vagueness grounds to the HAC aggravating circumstance pretrial, he did not object to the proposed instruction at trial except on the ground that the evidence did not support it; nor did he propose an alternative instruction. Appellate counsel cannot be faulted. *Ferguson v. Singletary*, 632 So.2d 53 (Fla.1993).(F) Grossman claims that

appellate counsel should have argued that codefendant Taylor's acquittal of first-degree felony murder precluded such a conviction for Grossman (and precluded application of the felony murder aggravating circumstance to Grossman) since Taylor was more guilty than Grossman. This issue has already been decided adversely to the defendant. *Eaton v. State,* 438 So.2d 822 (Fla.1983).(G) He claims that appellate counsel should have argued that the trial court failed to hold a hearing pursuant to *Richardson v. State,* 246 So.2d 771 (Fla.1971). The record, however, shows that defense counsel never claimed that a discovery violation took place and never requested a hearing. (H) He claims that appellate counsel should have argued more convincingly that the trial court erred in failing to grant a severance. This issue is procedurally barred—it was raised on appeal. We find no merit to Grossman's ineffectiveness claim.

*Grossman,* 708 So.2d at 252–253.

 Grossman has failed to show any factual or legal error in the Florida Supreme Court's rejection of Grossman's claim of ineffective assistance of appellate counsel. Claims of ineffective assistance of counsel are controlled by the standards set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Grossman offers no basis for a finding that the Florida Supreme Court decided this claim in a manner contrary to *Strickland,* or that the court's application of *Strickland* was objectively unreasonable. Although there is a constitutional right to effective assistance of counsel on the first appeal taken as a matter of right, *Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985), there is no constitutional duty to raise every nonfrivolous issue. *Jones v. Barnes,* 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). The failure of appellate counsel to brief issues he reasonably considers to be without merit is not ineffective assistance of counsel. *Alvord v. Wainwright,* 725 F.2d 1282, 1291 (11th Cir.), *cert. denied,* 469 U.S. 956, 105 S.Ct. 355, 83 L.Ed.2d 291 (1984).

Grossman's appellate attorney filed a 94-page brief raising seventeen issues for consideration. (Ex. B). The Florida Supreme Court reviewed the additional arguments Grossman claims should have been made, and determined that no appellate relief would have been forthcoming even if these claims had been raised. In light of the court's findings noted above, it is evident that the outcome of Grossman's appeal would not have changed even if the additional arguments had been raised.[9]

Grossman has failed to demonstrate that the state court's rejection of this claim relied on erroneous facts, or applied law contrary to established United States Supreme Court precedent or in a manner which was objectively unreasonable in light of such precedent. In addition, any possible constitutional error would be harmless under *Brecht.* Therefore, no habeas relief is warranted on ground six.

### Ground Seven

 Grossman raises a claim under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) alleging that the State failed to disclose exculpatory material relating to state witnesses Charles Brewer, Brian Hancock, and Brian Allan. Grossman raised this claim as Argument 2 in his postconviction appeal. (Ex. M, 56–67). It was denied on the merits.

9. Grossman's counsel did specifically challenge the application of all three aggravating factors found by the trial judge. (See Ex. B, pp. 80–83). Grossman's counsel also challenged the admission of Grossman's threats against Hancock. (See Ex. B, pp. 62–64).

The state courts' rejection of Grossman's *Brady* claim was fully consistent with all applicable federal law. Notably, the state court conducted a full and fair evidentiary hearing on these allegations and made factual findings that were affirmed by the Florida Supreme Court as supported by competent, substantial evidence. *Grossman*, 708 So.2d at 251. Grossman's dispute with the state courts' resolution of this issue is factual rather than legal. However, he does not acknowledge that most of the testimony presented at the evidentiary hearing refuted his claim, and the trial judge made specific factual findings against him.

As to Charles Brewer, the state court found that Brewer was not a state agent at the time that he discussed the murder with Grossman and that there was no deal struck by the State in exchange for Brewer's testimony. (Ex. L, V16/2823). The court found that, to the extent Brewer was not honest with regard to his prior record or in statements he attributed to Grossman, the State was not aware of the alleged falsity and it did not affect the conviction or sentence imposed in this case. (Ex. L, V16/2824). The court's findings with regard to Brewer are supported by competent, substantial evidence presented at the hearing. See, testimony of Charles Brewer (Ex. L, V13/2387–2426); Pinellas County Sheriff's Det. Robert Rhodes. (Ex. L, V14/2526–2528); Florida Department of Law Enforcement Agent John Halliday. (Ex. L, V15/2567, 2573); and Sixth Circuit State Attorney McCabe. (Ex. L, V15/2659–2663).

As to the allegations regarding Brian Hancock, the court found that Grossman had failed to show that Hancock testified falsely regarding the victim having been hit with her flashlight twenty or thirty times, or regarding his knowledge of the reward money, or regarding his unrelated arrest in another jurisdiction prior to Grossman's trial. (Ex. L, V16/2824–2826). These findings are supported by the testimony from the hearing. *See* testimony of Brian Hancock (Ex. L, V12/2151–2172); Pasco County Sheriff's Capt. Pete Petrosky and Lt. Charles Troy (Ex. L, V14/2497–2508); Det.Rhodes (Ex. L, V14/2523–2526); Agent Halliday (Ex. L, V15/2556–2562); and State Attorney McCabe (Ex. L, V15/2659–2663).

Finally, as to Brian Allan, the trial court found that the fact Allan was arrested on an unrelated drug charge the day of Grossman's penalty phase proceeding was purely coincidental; that the State Attorney's Office had no knowledge of Allan's arrest for several days; and that the fact that Allan was being investigated for selling marijuana at the time of the trial could not have been used for impeachment. (Ex. L, V16/2827). Once again, these findings are supported by the testimony presented at the hearing. See, testimony of Pasco County Sheriff's Det. Robert Sullivan. (Ex. L, 14/2512–2521); and Agent Halliday. (Ex. L, V15/2563–2567).

All of the trial court's factual findings on Grossman's *Brady* claim were affirmed by the Florida Supreme Court on appeal. *Grossman*, 708 So.2d at 251. Grossman relies exclusively on the postconviction testimony from Brewer and Hancock to attempt to meet his burden of demonstrating that the state court factual findings were incorrect; however, such testimony was considered and expressly rejected by the state courts. In light of the facts found by the state courts, and Grossman's failure to dispute or rebut the findings, claim must be denied.

On the facts of this case, there is no reasonable basis for a finding that the state courts' application of *Brady* was objectively unreasonable. Pursuant to *Brady*, a state is required to disclose exculpatory, material evidence that is within its

possession and not otherwise available to the defense through due diligence. Grossman's allegations fail to meet his burden of establishing constitutional error under *Brady*. The state court factual findings are supported by the evidence and must be given deference by this Court. In addition, any possible error in the state courts' treatment of this claim would be harmless in light of the overwhelming evidence of Grossman's guilt. Grossman has failed to demonstrate that the state courts' rejection of this claim relied on erroneous facts, or applied law contrary to established United States Supreme Court precedent or in a manner which was objectively unreasonable in light of such precedent. Therefore, no habeas relief is warranted on ground seven.

### Ground Eight

■ Grossman raises an additional claim concerning the purported denial of right to counsel during a confrontation with an alleged state agent, Charles Brewer. He alleges that he was denied his rights under the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution when the State knowingly exploited an opportunity to question Grossman outside the presence of counsel.

Grossman raised this claim as Argument 3 in his postconviction appeal. (Ex. M, 72–74). It was denied on the merits. Specifically, the trial judge found that Brewer was not acting as a state agent at the time he talked to Grossman about the murder. (Ex. L, V16/2827). This finding was affirmed on appeal by the Florida Supreme Court. *Grossman*, 708 So.2d at 251–52.

Grossman relies exclusively on Brewer's testimony at the state court postconviction hearing to assert that Brewer was a state agent. However, Grossman does not identify any deficiencies in the factfinding process, or otherwise challenge the adequacy of the trial court's ruling. Instead, he merely cites contrary testimony that was specifically rejected in the state courts.

■ In order to prevail on this claim, Grossman must demonstrate that the inmate, Charles Brewer, was a government agent, and that Brewer deliberately elicited incriminating statements. *Lightbourne v. Dugger*, 829 F.2d 1012, 1020 (11th Cir. 1987). There is no bright-line rule for determining whether an individual is a government agent. The answer depends on the "facts and circumstances" of each case. *Lightbourne*, 829 F.2d at 1020. At a minimum, however, there must be some evidence that an agreement, express or implied, between the individual and a government official existed at the time the elicitation took place. 829 F.2d at 1020. The state court findings rejecting Grossman's assertion of an agency relationship establish that there is no merit to this claim.

Grossman has failed to demonstrate that the state courts' rejection of this claim relied on erroneous facts, or applied law contrary to United States Supreme Court precedent or in a manner which was objectively unreasonable in light of such precedent. Therefore, no habeas relief is warranted on ground eight.

### Ground Nine

Grossman alleges that he was denied his constitutional right to the effective assistance of counsel during the penalty phase of his capital trial. Grossman raised this claim in his postconviction appeal. (Ex. M, 4–55). The claim was denied on the merits.

An examination of the entire transcript of the instant case, both on direct appeal and on collateral review, reveals that Grossman's attorneys acted as advocates who subjected the State's case to an adversarial testing. The evidence developed at the evidentiary hearing in the state court

shows that Grossman was not deprived of his Sixth Amendment right to effective assistance of counsel.

Both the state trial court judge and the Florida Supreme Court applied *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) standards, and determined that Grossman had failed to establish either attorney deficiency or prejudice. (Ex. L, V16/2836). *Grossman*, 708 So.2d at 250–251. As *Strickland* is clearly the prevailing law, see *Williams*, 529 U.S. at 416, 120 S.Ct. 1495, any claim that the state courts acted "contrary to" established federal law is without merit. In addition, no unreasonable application of *Strickland* can be discerned on the facts of this case.

Both of Grossman's trial attorneys, Tom McCoun and Ira Berman, testified at length at the evidentiary hearing. (Ex. L, V11/1991–2046; V12/2217–2274). The trial court recited numerous facts describing the penalty phase investigation from their testimony, and concluded:

> The Court has evaluated the conduct of the Defendant's counsel from counsel's perspective at the time of the trial. Defendant introduced thirty-three affidavits that were represented as possible mitigation witnesses that were available at the time of trial but were not used by the defense. Several of the possible witnesses represented by the affidavits were known to the defense, and the defense had determined not to use them.
>
> Defense counsel, Mr. McCoun, at the time of trial recognized that while trying to present a favorable picture of the Defendant, equally negative things would also be presented. Mr. McCoun did not want to use witnesses who would say that the Defendant was into stealing and heavy drug use. Moreover, defense counsel called three mitigating witnesses in addition to the Defendant's mother. The mitigating witnesses that were

called had close contact with the defendant near the time that he committed the crime; whereas, many of the potential witnesses that were represented by the affidavits had not seen the Defendant in years.

> The Court finds that Mr. McCoun did a competent, effective job of representing the Defendant at all phases of the trial. Even if counsel were deemed ineffective for the reasons stated by the Defendant, such alleged ineffectiveness did not come close to being so prejudicial to the Defendant that it affected the outcome of the case. The facts of this case showed the Defendant's conduct to be so egregious that proof of mitigating circumstances was extremely difficult.

(Ex. L, V16/2836–2837).

The trial record reflects that four defense witnesses testified at the penalty phase. Grossman's mother, Myra Grossman, testified that Grossman's father had died when he was 50 years old and Grossman was 15. (Ex. A, V15/2609). She noted that Grossman's father had suffered from myotonic dystrophy, and detailed how Grossman had assisted his father by helping him in and out of his wheelchair and carrying him to the bathroom. (Ex. A, V15/2611–13). She stated that the family had lived in Hialeah, Florida, from the time Grossman was about five months old until he was 13 or 14; that Grossman was a Boy Scout; had a difficult time dealing with his father's death; worked and supported his mother; and was a typical teenager with a car and pets. (Ex. A, V15/2610–2614). According to Mrs. Grossman, he was never violent but was a normal boy, and "this incident" was completely out of character for him. (Ex. A, V15/2614, 2617). She testified that she still loved Grossman. (Ex. A, V15/2616).

The defense also presented Detention Officer Thomas Campbell and Corrections

Social Worker Carolyn Middleton to describe Grossman as a good inmate who did not cause problems, was not violent, and took his trial seriously. (Ex. A, V15/2624–27; 2639–42). The fourth witness was Steven Martakas, a close friend of the Grossmans since he was in junior high school. (Ex. A, V15/2631–34). Martakas stated that Grossman was a good friend, always there for him, and that Grossman gave him advice and told him not to smoke or take drugs. (Ex. A, V15/2636–37). He also noted that Grossman was very protective of his family. (Ex. A, V15/2635).

Grossman has failed to acknowledge a large amount of the testimony presented at the evidentiary hearing related to this issue. At the hearing, his defense attorneys testified extensively about the preparation for, and litigation of, Grossman's trial. Trial counsel Tom McCoun testified that he was court-appointed to represent Grossman after the public defender's office withdrew. (Ex. L, V11/1991).

Attorney McCoun was an experienced criminal attorney, having prosecuted and defended many cases, including capital cases, at the time of his appointment. (Ex. L, V11/1989). Attorney Ira Berman was appointed as co-counsel in the early stages of the case. (Ex. L, V11/1991, 1999). Attorney McCoun testified that much of his affidavit filed in conjunction with the motion to vacate was "from the perspective of hindsight." (Ex. L, V11/2023). He stated that he tried to develop background information at the time of trial, but was not successful. (Ex. L, V11/1999–2002). He traveled to Pasco County a number of times, and spoke to Grossman's mother and grandmother in order to develop names of penalty phase witnesses from family, neighbors or friends. (Ex. L, V11/2000, 2030). Attorney McCoun stated that he researched past addresses, as well as Grossman's educational, medical, and psychological background records. (Ex. L, V11/2000, 2031). Attorney McCoun also sought funds for a court-appointed confidential expert. (Ex. L, V11/2000).

Attorney McCoun had reviewed the background affidavits submitted, and would not have automatically called these affiants as witnesses only on the basis of the affidavits. (Ex. L, V11/2033, 2034, 2043). Attorney McCoun could not conclude that presenting additional mitigation evidence would have changed the outcome of the case. (Ex. L, V11/2035). He definitely would not have presented Rosol Melton or Paul Melton or many of the affiants as defense witnesses, since they had negative information about Grossman that would have been harmful to the defense. (Ex. L, V11/2036, 2037, 2048). He recalled having spoken to Louise Levine, but did not remember why she was not used at trial. (Ex. L, V11/2038). He did present Myra Grossman as a penalty phase witness, and he would have avoided calling other witnesses that would have made Myra Grossman "look bad." (Ex. L, V11/2038, 2040–42).

At the time of trial, Attorney McCoun was aware of many of the affiants as potential penalty phase witnesses, but decided not to call them as witnesses. (Ex. L, V11/2035–38, 2045, 2046). He would not have emphasized testimony about Grossman's heavy drug use or probation, since he was trying to avoid negative comments and evidence about Grossman. (Ex. L, V11/2042, 2048, 2050). Attorney McCoun noted that the state "had a solid case of Grossman's guilt," as there was an abundance of evidence that Grossman shot the victim. (Ex. L, V11/2055–56). The state was also well prepared for the penalty phase. (Ex. L, V11/2005).

Attorney Ira Berman was also an experienced criminal attorney when he was appointed to assist Attorney McCoun with

Grossman's case. (Ex. L,V12/2217–19). Berman did not see his role in this case as co-counsel, believing that his role was mostly to assist with discovery, since Attorney McCoun was occupied with many other cases. (Ex. L, V12/2220–21). After the October 17, 1985, motion for continuance was denied, Attorney McCoun expanded Berman's role and told him to start investigating for the penalty phase. (Ex. L, V12/2225). Consequently, Berman did not participate in, and was not present for much of the guilt phase (Ex. L, V12/2226, 2229; Ex. A, V8/1254).

Berman talked to jail personnel who had known Grossman over the previous year. (Ex. L, V12/2229–30, 2251). One of the penalty phase witnesses that testified, Steven Martakas, had been found by Attorney McCoun as part of his investigation. (Ex. L, V12/2231). Attorney McCoun had done some preliminary investigation. Attorney McCoun told Berman that Grossman's mother told Attorney McCoun that she did not know of anyone who would come in to speak on behalf of Grossman. (Ex. L, V11/2047, V12/2227, 2241–43, 2248).

Attorney Berman testified that this case presented the worst factual scenario as far as the emotional level generated by the atrocity of the crime. (Ex. L, V11/2048, V12/2244). The attorneys knew they needed more background information, some "impact" testimony that would portray Grossman as a different person from the one who shot Officer Park. (Ex. L, V11/2049–50, V12/2244, 2245). Berman had not traveled to Dade County or to Veteran's Village in New Port Richey to try to locate possible witnesses. (Ex. L, V12/2230). However, he stated that he did not believe that information about Grossman's background as a young child, and even up to thirteen years of age, would have changed the jury recommendation in this case. (Ex. L,V12/2245–48). Berman noted that generally, such information be-comes more relevant as it relates to a defendant as he gets older and is closer in time to the date of the offense. (Ex. L, V12/2245).

In retrospect, Berman felt that he and Attorney McCoun had done the best they could with what they had, but they should have developed more and should have told the court prior to the penalty phase that they were not ready. (Ex. L, V12/2240, 2249–50). They had discussed using Dr. Sidney Merin, a mental health expert, as a penalty phase witness, but determined that he would not be helpful. (Ex. L,V12/2246–47, 2281). They were specifically searching for someone to say positive, beneficial things about Grossman. (Ex. L, V12/2227, 2248). The jail personnel who testified accomplished what the attorneys wanted, showing Grossman was not a beast but could be courteous, cooperative and non-violent. (Ex. L, V12/2251–52).

Attorney Berman had no knowledge of how the recent affiants had been discovered, but he would not have put them on the stand simply on the basis of the affidavits. (Ex. L, V12/2260). Some of these witnesses had information about Grossman's stealing and drug use that the attorneys would not have wanted to come out during the penalty phase, (Ex. L, V12/2263, 2264). Attorney Berman felt that the jury had heard enough bad things about Grossman. The attorneys only wanted witnesses who could talk about Berman's good qualifies. (Ex. L, V12/2264). Similarly, he would not put on people who would have negative things to say about a defendant's mother, unless the particular strategy was to totally blame the mother, which is risky and not the case here. (Ex. L, V12/2264–65).

Berman noted that the victim in this case had many qualities to generate sympathy with the jury, being a young, female, law enforcement wildlife officer. (Ex. L, V12/2274). Therefore, he did not believe the currently proposed mitigation about

Grossman's earlier years would have changed the jury recommendation in this case. (Ex. L, V12/2245–46, 2269–70).

Over the state's objection, Grossman was permitted to introduce the affidavits of family and friends at the hearing as substantive evidence in lieu of live testimony from these witnesses. In order to test the credibility of the affidavits, Scott Hopkins, an investigator with the state attorney's office, attempted to contact the people who had provided affidavits in support of the 3.850 motion. (Ex. L, V15/2574–75). Hopkins' testimony reveals that many of the affiants barely knew Grossman, and those who did would have offered negative testimony which his attorneys would not have presented. (Ex. L, V15/2576–2617). Several affiants affirmatively declined to make positive statements in their affidavits, (Ex. L, V15/2581, 2587–88, 2599–2600, 2613); a number of them believed that Grossman's death sentence was appropriate. (Ex. L, V15/2580–82, 2597, 2601, 2608–09).

The facts as developed in state court clearly establish that Grossman received aggressive, competent representation throughout all phases of his capital trial. Grossman has offered no basis for rejection of the state courts' factual findings that defense counsel was aware of much of the purported mitigation discussed at the postconviction hearing and determined not to use the mitigating evidence during the penalty phase of Grossman's trial.

■ In addition, Grossman has not established that the state courts' application of *Strickland* was objectively unreasonable on these facts. In *Chandler v. United States*, 218 F.3d 1305 (11th Cir.2000) (en banc), the Eleventh Circuit extensively reviewed the appropriate principles for the application of *Strickland*'s requirement that a defendant challenging the effectiveness of his legal representation bear a difficult burden to establish that his attor-

ney rendered a constitutionally deficient performance, and that such performance prejudiced the defense. To the extent that Grossman's current counsel simply disagrees with the strategic decisions made by trial counsel, or suggests that additional mitigation, objection, or argument could have made a difference, *Chandler* clearly holds his claims insufficient to demonstrate Sixth Amendment error.

None of Grossman's claims of ineffective assistance of counsel have merit, as shown below.

### ALLEGED FAILURE TO DEVELOP MITIGATION

■ The first basis offered to support Grossman's ineffective assistance of penalty phase counsel claim is the alleged failure to develop mitigating evidence. This claim is without merit. Attorney McCoun testified that he had begun a preliminary investigation for possible penalty phase witnesses before the guilt phase of the trial commenced. (Ex. L, V11/1999–2002). Specifically, Attorney McCoun had talked to Grossman, his mother and grandmother; had attempted to develop other possible witnesses through these people; had located Steven Martakas, a witness who testified that he had been Grossman's best friend in junior high; had researched Grossman's past addresses, and his educational, medical, and emotional background; and had explored the possibility of mental mitigators with Dr. Sidney Merin. (Ex. L, V11/1999–2002, 2030–31). When the motion to continue the trial was denied on October 17, 1985, two weeks prior to the start of the penalty phase, Attorney McCoun enlisted the aid of Attorney Ira Berman in further penalty phase preparation. (Ex. L, V12/2225). Berman was able to locate witnesses who had known Grossman while he had been in jail for the previous year, and these witnesses were presented and accomplished the defense's goal of demonstrating that

Grossman was "not a beast" but could be courteous, cooperative and nonviolent. (Ex. L, V12/2251–52).

Attorney McCoun had spoken to Rosol, Paul Melton and Louise Levine. (Ex. L, V11/2000, 2030, 2035–36). He stated unequivocally that he would not have called either Rosol or Paul as a witness because they had harmful information that would have been detrimental to the defense. (Ex. L, V11/2036). Although Attorney McCoun could not recall why he decided not to use Louise as a witness, he remembered having spoken to her and determined not to call her. (Ex. L, V11/2038–39). He did not want to emphasize the fact that Grossman had been on probation and certainly would not have called witnesses who believed Grossman should receive a death sentence. (Ex. L, V11/2042, 2045). He made a strategic decision not to use Dr. Merin as an expert witness. (Ex. L, V11/2000, 2050–51, V12/2281).

Co-counsel Ira Berman testified that he began his penalty phase investigation after the continuance was denied on October 17, 1985. His investigation was a follow-up to the preliminary investigation that Attorney McCoun had conducted. (Ex. L, V12/2225, 2227, 2229–30, 2241). Attorney McCoun told Berman that he had spoken with Martin Grossman's mother, Myra Grossman, and that she had indicated she did not know of anyone who would speak on Grossman's behalf. (Ex. L, V12/2241–42). Berman noted that this case presented the a terrible factual scenario to the community, and that the attorneys were searching for anyone with anything positive to say about Grossman. (Ex. L, V12/2244, 2248). He did not know what more could have been done. (Ex. L, V12/2250). He did not believe that the potential witnesses identified at the evidentiary hearing would have

made any difference in the penalty; most of the information they had was too remote in time from the offense to be persuasive. (Ex. L, V12/2245–46, 2269–70).

In *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052, the United States Supreme Court emphasized that, in determining whether counsel's performance was constitutionally deficient, the challenged conduct must be evaluated from counsel's perspective at the time. The focus of Grossman's argument is that, after several years and undisclosed tactics, Grossman's collateral attorneys have succeeded in having people sign affidavits indicating that they could think of something nice to say about Grossman. Thus, the argument in this issue is premised on the claim that a more thorough and detailed presentation could have been made to his jury. However, that fact clearly does not establish that performance was deficient.

The defense strategy for penalty phase was to demonstrate that Grossman was not an animal but a young man with positive characteristics who did not deserve to die. (Ex. L, V11/2036–38, 2042, 2048, 2050, V12/2227, 2229–30, 2244, 2245, 2248, 2263–64; Ex. A, V15/2688–2696, 2703–2706). Many of the affidavits offered to support Grossman's argument in this case presented facts cumulative to the testimony of Myra Grossman and Steven Martakas. In addition, many of the affidavits, and much of the mitigation now suggested by the defense, were inconsistent with the penalty phase strategy, because the evidence would have reminded the jury of Grossman's negative character traits, such as his drug use and prior criminal history. (Ex. L, V11/2035–38, 2042, 2045–50).

The affidavits themselves were of limited evidentiary value.[10] They are distinctly one-sided, and the testimony at the state

---

**10.** The trial court admitted the affidavits as substantive evidence over the state's objec-

tion. (Ex. L, V11/1925–26, 1929–32, 1972–76). In *Routly v. State*, 590 So.2d 397, 401,

evidentiary hearing established that the affiants had very limited knowledge of Martin Grossman. (Ex. L, V15/2580–82, 2585–92, 2596, 2603, 2604, 2610–13, 2615). The affiants who knew Grossman as a child had lost touch with him after his family moved to New Port Richey, Florida. (Ex. L, V15/2582, 2590–91, 2596–97, 2600, 2603, 2615). Some of the affidavits were identified as inaccurate; some affiants felt pressured into signing the statements, and many affidavits were based on speculation and information heard through other people. (Ex. L, V15/2576, 2580, 2581, 2586, 2589, 2591, 2592, 2593, 2597, 2599–2601, 2603, 2607, 2610, 2617).

Both Attorney McCoun's and Attorney Ira Berman's testimony revealed why they would not have used as witnesses many of the affiants, such as Rosol and Paul Melton, who were instrumental in turning Grossman in to the police. (Ex. L, V11/2036–37, 2048, 2263–65). They chose not to put on witnesses who would have had negative things to say about Grossman or his mother, or who would have opened the door to testimony about Grossman's drug and alcohol abuse and his previous criminal activities. (Ex. L, V11/2038, 2040–42, 2048, 2050, V12/2227, 2248, 2263–65). The testimony of the social worker, Kevin Sullivan, strategically would not have been presented for the same reason. (Ex. L, V11/2071–2119).

Grossman has failed to show that the strategy to present only favorable, positive penalty phase testimony about Grossman was unreasonable. Attorney McCoun interviewed family members and school friends in furtherance of this strategy. (Ex. L, V11/1999–2002, 2030–31). As in *Spaziano v. Singletary*, 36 F.3d 1028 (11th Cir.1994), "[t]here is nothing in the record to indicate that [Grossman's] present counsel are either more experienced or wiser than his trial counsel, but even if they were, the fact that they would have pursued a different strategy is not enough." If the best lawyers or even most good lawyers "could have conducted a more thorough investigation that might have borne fruit," it does not mean that these attorneys' performance fell outside the wide range of reasonably effective assistance. *Id.* at 1040, 1041.

A review of other cases supports the conclusion that no ineffective assistance of counsel has been shown on the facts of this case. In *White v. Singletary*, 972 F.2d 1218 (11th Cir.1992), trial counsel had spoken to family members, and presented five witnesses, including White's mother, uncle, and fiancé. The court held that this situation was clearly distinguished from cases showing a lack of any investigation. "A lawyer can almost always do something more in every case—the Constitution requires a good deal less than maximum performance." 972 F.2d at 1225. And in *Lightbourne v. Dugger*, 829 F.2d 1012, 1024 (11th Cir.1987), the defendant was the only witness at the penalty phase of his trial. He testified about his age, citizenship, lack of significant criminal record, children and education. At the hearing on his ineffective counsel claim, there were twenty-seven affidavits offered from his family and friends to demonstrate his impoverished childhood. Counsel was found to have been effective since most of the proffered evidence was cumulative to Lightbourne's own testimony. In rejecting the claim, the court noted that "It is evident that an investigation was conducted and that counsel thereafter elected to put the petitioner on the stand." 829 F.2d at 1026. See also *Bertolotti v. Dugger*, 883 F.2d 1503 (11th Cir.1989) (reasonable penalty phase investigation was found based on counsel having interviewed Bertolotti's

n. 5 (Fla.1991), the Florida Supreme Court noted that, absent a stipulation or other legal basis, such affidavits should not be used as substantive evidence.

parents and having the parents complete a questionnaire).

■ Although Attorney McCoun testified that he believed that his penalty phase performance in this case was "ineffective" under the ordinary, common sense meaning of that term, an attorney's own admission of ineffectiveness is "of little persuasion." *Routly v. State,* 590 So.2d 397, 401, n. 4 (Fla.1991); *Kelley v. State,* 569 So.2d 754 (Fla.1990). This is particularly true in this case, where Attorney McCoun's use of that term was premised on the benefit of hindsight, and qualified by the acceptance of the affidavits in this case as accurate and credible. (Ex. L, V11/2004, 2005, 2023) (see testimony of Scott Hopkins as to accuracy and credibility of affidavits, Ex. L, V15/2574–2617).

*Strickland* also counsels that, if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, it is not necessary to address whether counsel's performance fell below the standard of reasonably competent counsel. 466 U.S. at 697, 104 S.Ct. 2052. The jury recommendation of death in this case was unanimous. Both trial attorneys recognized at the evidentiary hearing below that offering additional mitigating evidence probably would not have changed the outcome in this case. (Ex. L, V11/2035, V12/2245–48, 2269–70). Trial testimony revealed that Grossman committed outrageous and brutal acts against a young female wildlife officer, striking her repeatedly with her own flashlight and then shooting her in the head with her own gun.

■ In order to establish prejudice to demonstrate a Sixth Amendment violation in a penalty phase proceeding, a defendant must show that, but for the alleged errors, the sentencer would have weighed the balance of the aggravating and mitigating factors and found that the circumstances did not warrant the death penalty. *Strick-*

*land,* 466 U.S. at 694, 104 S.Ct. 2052. The aggravating factors found in this case were: the murder was committed during the course of a felony; committed for the purpose of avoiding arrest; and to hinder law enforcement; and committed in a heinous, atrocious or cruel manner.

Grossman has not and cannot meet the standard required to prove that his attorney was ineffective when the facts to support these aggravating factors are compared to the purported mitigation now argued by collateral counsel. The investigation and presentation of mitigating evidence in this case was well within the realm of constitutionally adequate assistance of counsel. Trial counsel conducted a reasonable investigation, presented appropriate penalty phase evidence, and forcefully argued for the jury to recommend sparing Grossman's life. The state trial judge determined that the attorneys were effective, but even if they were deemed ineffective, "such alleged ineffectiveness did not come close to being so prejudicial to the Defendant that it affected the outcome of the case." This determination is entitled to considerable weight, since it was rendered by the same judge who imposed Grossman's death sentence. *Routly,* 590 So.2d at 402; *Francis v. State,* 529 So.2d 670, 673, n. 9 (Fla.1988). There has been no deficient performance established in the way Grossman was represented in the penalty phase of his trial.

Grossman has failed to demonstrate any error in the denial of his claim that his attorneys were ineffective in the investigation and presentation of mitigating evidence.

### ALLEGED FAILURE TO OBJECT TO IMPROPER NONSTATUTORY AGGRAVATING EVIDENCE

■ The comments and evidence that Grossman claims counsel should have

objected to as nonstatutory aggravation were proper rebuttal to the mitigation offered and Grossman is not entitled to relief on this claim.[11] For example, asking Grossman's mother on cross-examination about his acts and threats against Hancock and noting Grossman's history of trouble with law enforcement were appropriate, given Myra Grossman's direct testimony that Grossman was a normal, nonviolent boy and that this incident was entirely out of character. (Ex. A, V15/2613–14, 2617). Questioning Detention Officer Campbell about the security at the jail was proper in light of Campbell's testimony that Grossman did not cause problems as an inmate. (Ex. A, V15/2627). The fact that defense counsel argued as mitigating that Grossman's mother loved him warranted the prosecutor's comment that having a mother who loved you did not compel a recommendation of a life sentence rather than a death sentence. (Ex. A, V15/2688).

Grossman has not offered a legitimate basis for defense counsel to have objected to evidence and argument by the state that demonstrated the insignificance of the mitigation presented at the penalty phase.

## FAILURE TO OBJECT TO PROSE-CUTOR'S ALLEGED "GOLD-EN RULE" ARGUMENT

Grossman's next alleged deficiency relates to his attorneys' failure to object to the prosecutor's penalty phase closing argument. As to this claim, the trial judge noted that the defense expert at the evidentiary hearing had stated that the alleged Golden Rule argument was very subtle, and that trial counsel McCoun testified that "from one perspective the comments could be considered a Golden Rule violation, but from another perspective they would not." (Ex. L, V11/2006, V13/2354).

Grossman has failed to establish that the Sixth Amendment was violated by the lack of an objection to the prosecutor's argument. When the entire argument is read in context, it is evident that no objectionable statements were made. The prosecutor's description of the "pain and terror" suffered by Peggy Park was relevant since the state was seeking the aggravating factor of heinous, atrocious or cruel, which was ultimately found by the trial judge and upheld on appeal. *Muehleman v. State,* 503 So.2d 310, 317 (Fla.1987) (comments may have excited passions but were highly relevant in establishing aggravating factors). Certainly, it is appropriate for the jury to subjectively consider a victim's suffering in considering the applicability of the heinous, atrocious or cruel factor. Since the prosecutor was not seeking to generate sympathy for the victim, but to help the jury understand the atrocity of Grossman's actions, no Golden Rule violation occurred. *See Kennedy v. Dugger,* 933 F.2d 905, 913 (11th Cir.1991) (prosecutor's argument "Can you imagine, in your own living room not bothering a soul on a Saturday afternoon? He ... walked back down to your own house, and, a total stranger, because you got in his way, destroys you" not an improper invitation to the jury to place themselves in the position of the victim, but a permissible comment on the future dangerousness of the defendant); *Davis v. State,* 461 So.2d 67, 70 (Fla.1984) (comments not Golden Rule violation based on manner and context).

Even if the prosecutor's comments in this case were deemed to be a Golden Rule violation, the failure to object did not demonstrate ineffectiveness, since the alleged improper remarks did not become a feature of the trial. *See Sims v. State,* 602 So.2d 1253, 1257 (Fla.1992) (rejecting claim

---

11. In fact, counsel did object to some of this testimony. (Ex. A, V15/2620–21).

of ineffective assistance of counsel for failure to object to Golden Rule violation); *Bertolotti v. State*, 476 So.2d 130, 133 (Fla. 1985) (prosecutor's penalty phase closing argument, including Golden Rule violation, not egregious enough to warrant new sentencing). In this case, the prosecutor's closing argument comprises twenty-eight pages of transcript. (Ex. A, V15/2655–83). Grossman has recited from selected portions of five pages of the argument, including the pages where the prosecutor was discussing the applicability of the heinous, atrocious or cruel aggravator. (Ex. A, V15/2664–65, 2670–72). Other aggravators were also discussed in the closing, but the majority of the prosecutor's remarks were actually directed at the insignificance of the mitigating evidence that had been presented. (Ex. A, V15/2672–82).

Grossman has not shown that the prosecutor's argument was improper; but even if some of the statements were improper, they did not rise to the level of reversible error since they were not a feature of the trial. On these facts, any objection by defense counsel would not have made a difference in the outcome of the penalty phase.

### FAILURE TO PROVIDE AN EFFECTIVE CLOSING ARGUMENT

■ A review of defense counsel's closing argument refutes Grossman's claim of ineffectiveness based on the alleged inadequacy of the closing argument. While the defense may not have focused on emphasizing particular mitigating factors to current counsel's satisfaction, the overall theme of the closing argument was to repeatedly stress the penalty phase strategy emphasizing that Grossman was a normal child, with family and friends who cared about him; that he was not a morally corrupt beast and that this incident was totally out of character for him; and that his ability to behave appropriately in pris-

on demonstrated that there was no need for him to be executed, as society would be protected by the imposition of a life sentence. (Ex. A, V15/2683–2707). Counsel also emphasized the gravity of the decision the jury was being asked to make and the importance of disregarding feelings of anger, sympathy or revenge. (Ex. A, V15/2690–93, 2698–2700).

■ It can be and was determined on the face of this record that Grossman has failed to show any deficient performance by his trial attorneys. Even if another attorney might have presented additional mitigation, offered other legal objections, or provided a different closing argument, no possible prejudice can be discerned on these facts. What is clear, and the state courts so found, is the fact that even had these additional matters in mitigation been presented to the jury and trial judge, there is no reasonable probability that the outcome would have been different. The aggravating circumstances found in this case were significant; the mitigation, even as now proffered, is not compelling. Most significantly, the jury recommendation for death was unanimous. Accordingly, no constitutional error has been shown.

■ Grossman has failed to demonstrate that the state courts' rejection of this claim relied on erroneous facts, or applied law contrary to United States Supreme Court precedent or in a manner which was objectively unreasonable in light of such precedent. Therefore, no habeas relief is warranted on ground nine.

### Ground Ten

Grossman raises two distinct claims in ground ten, neither of which is properly before this Court. He asserts that there was insufficient evidence to support the trial court's finding of the three aggravating factors, and that the jury instruction

on the heinous, atrocious or cruel aggravating factor was unconstitutionally vague.

■ Grossman raised the claim challenging the sufficiency of the evidence to support the aggravating factors in his direct appeal. (Ex. B, 80–83). A review of the direct appeal brief reveals that this issue was presented in state court as a matter of state law only; he did not cite any federal cases or even summarily refer to the federal constitution in his argument on this issue. Therefore, to the extent that Grossman attempts to raise a federal constitutional question with regard to the application of the aggravating factors, that claim has not been exhausted in state court and is procedurally barred in this Court. *Picard,* 404 U.S. at 275, 92 S.Ct. 509.

■ Grossman raised his claim of vagueness as to the jury instruction on the heinous, atrocious or cruel aggravating factor in his postconviction appeal to the Florida Supreme Court. (Ex. M, 90–93). That court found that the claim was procedurally barred. *Grossman,* 708 So.2d at 252, n. 6. Therefore, neither of the allegations in Grossman's federal habeas petition on this issue is properly before this Court.

Even if the claims were properly before this Court, Grossman would not be entitled to relief because the claims have no merit. The Florida Supreme Court correctly denied Grossman's argument that the evidence did not support the application of the aggravating factors. *Grossman,* 525 So.2d at 840–41. In rejecting this claim, the court made relevant factual findings. As to the first factor, that the murder was committed during the course of a robbery or burglary, the Florida Supreme Court found, "it is clear from the evidence that appellant's handgun and driver's license and the victim's handgun were forcibly taken and that the struggle occurred at least in part inside the victim's vehicle.

Thus, both a burglary and a robbery occurred."

As to the second and third factors, the murder was committed to avoid arrest and to hinder law enforcement, which were merged by the trial judge, the Florida Supreme Court stated, "it is clear from the evidence that appellant advised the officer that he was in violation of his probation and that he committed the murder to escape from, avoid, or prevent, an arrest and to disrupt or hinder the enforcement of the probation laws. Moreover, the evidence also shows that the handgun in his possession was obtained illegally, which fact would have been revealed had he not escaped and taken back the weapon [from the officer]."

Finally, as to the last factor, the murder was heinous, atrocious, or cruel, the Florida Supreme Court stated:

As to aggravating factor four, appellant argues that death occurred almost instantaneously and that there were no additional acts to set the crime apart from the norm. This argument overlooks the fact that the murder was preceded by a brutal beating. Appellant's statements indicate that he struck the officer twenty to thirty times with a heavy-duty flashlight but was unable to beat her into unconsciousness or to subdue her despite his large size and the assistance of Taylor. The ferocity of the attack and the ferocity with which the officer defended herself, coupled with her knowledge that appellant was attacking to prevent a return to prison, lead inevitably to the conclusion that she knew she was fighting for her life and knew that if she was subdued or her weapon taken, her life would be forfeited. Under these circumstances, we are satisfied that the trial judge did not abuse his discretion in finding that the

murder was heinous, atrocious, and cruel.

*Grossman*, 525 So.2d at 841 (footnotes omitted). Grossman has not demonstrated that the facts or law applied to this claim are unreasonable or erroneous, and no habeas relief is warranted.

The Florida Supreme Court is the final arbiter of Florida law; federal courts must respect that law absent a constitutional violation. A federal habeas court may not issue the writ on the basis of a state's interpretation of its own laws and rules, absent extreme circumstances. *Pulley,* 465 U.S. at 42, 104 S.Ct. 871. Grossman has not demonstrated any such circumstances.

As to the claim that the jury instruction provided on the heinous, atrocious or cruel aggravating factor was unconstitutionally vague, review of Grossman's argument is precluded because 1) the issue was specifically found to be procedurally barred in state court, *see Grossman*, 708 So.2d at 252 n. 6, and 2) the holding of *Espinosa v. Florida*, 505 U.S. 1079, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992), is a new rule which cannot be retroactively applied to Grossman under *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). *Lambrix v. Singletary,* 520 U.S. 518, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997). Furthermore, on the facts of this case, no relief is warranted, even if *Espinosa* were deemed to apply to Grossman's sentence, because any impropriety in the jury instruction on the heinous, atrocious or cruel factor was clearly harmless beyond any reasonable doubt. Under *Brecht,* constitutional error will be considered harmless in a habeas proceeding unless the error had substantial and injurious effect or influence in determining the sentence. The Florida Supreme Court has recognized that an inadequate jury instruction on

the heinous, atrocious or cruel factor does not affect the outcome of a case when the acts perpetrated by a defendant were, in fact, heinous, atrocious and cruel under any definition. *See State v. Stewart,* 636 So.2d 16 (Fla.1994). The facts discussed by the Florida Supreme Court supporting the finding of this factor demonstrate that Park's murder fit within the constitutional definition of heinous, atrocious, or cruel.

Grossman's proposal that evidence from the state court postconviction hearing suggested "that the beating with a flashlight never happened" is not supported by the testimony from that hearing. Defense expert John Feegle, an expert in forensic pathology, had reviewed the autopsy report, as well as photographs, affidavits, and a copy of Dr. Corcoran's testimony from Grossman's trial, but had not heard the tape of Park's call. (Ex. L, V12/2125, 2133–34, 2147). Feegle agreed with Corcoran's report and testimony (Ex. L, V12/2135, 2142–43, 2145). Although Feegle could not confirm evidence of 20 to 30 "blows," if a blow is considered to be a hit of sufficient force to cause a bruise or laceration, he opined that the victim had been forcefully struck at least three or four times on the top of her head (Ex. L, V12/2135, 2140, 2145–46). The fact that Park's face and head were severely wounded from the blows as well as from the gunshot wound, made it difficult to determine the exact number of blows to her head prior to the shooting.

Grossman himself has never stated that he did not hit Park 20 or 30 times. Grossman has never stated that he did not tell Hancock that he had done so. The state trial court specifically found that the evidence did not support Grossman's assertion that Hancock's testimony with regard to the number of blows was false (Ex. L, V16/2824).

Thus, there was strong factual support for all of the aggravating factors applied by the trial judge, and no compelling mitigation has ever been offered in this case. The jury recommendation for death was unanimous. On these facts, any possible error in this issue was harmless under *Brecht*.

Grossman has failed to demonstrate that the state courts' rejection of this claim relied on erroneous facts, or applied law contrary to established United States Supreme Court precedent or in a manner which was objectively unreasonable in light of such precedent. Therefore, no habeas relief is warranted on ground ten.

### Ground Eleven

■ Grossman raises a legal claim disputing the constitutionality of Florida's death penalty statute. He raised this claim in his direct appeal (Ex. B, 86–93), and the claim was denied on the merits by the Florida Supreme Court. *Grossman*, 525 So.2d at 837–838.

Grossman claims that the Florida Death Penalty Statute, Section 921.141, Florida Statutes (1985), is unconstitutional because there is no requirement that the defendant in a capital murder case be informed in the indictment or be given other notice of the aggravating factors on which the state intends to rely in seeking the death penalty. He alleges that the alternative of a life sentence with a mandatory twenty-five years prison term would have been an equally effective method of preventing Grossman from committing future crimes and of deterring homicide. Grossman also alleges that the standards in the Statute are so vague, ambiguous, and indefinite that the defendant is deprived of his right to know the nature of the charges against him. Grossman further alleges that the Statute places upon the defendant the burden of proving mitigating circumstances. Finally, he claims that the sentencing patterns under the Florida Death Penalty Statute have exhibited a pattern of arbitrary and capricious sentencing.

Grossman has failed to identify any United States Supreme Court decision that is contrary to the state courts' rejection of this claim. Grossman has not shown that established federal law was unreasonably applied by the state court. In fact, Grossman does not cite legal authority to support his conclusory claim of unconstitutionality. No state or federal court has ever invalidated Florida's statute on the claims Grossman raises and Grossman is not entitled to habeas corpus relief on ground eleven.

### Ground Twelve

■ Grossman claims that his Sixth, Eighth, and Fourteenth Amendment rights were violated when the trial court denied his motion for continuance. Grossman raised this claim on direct appeal (Ex. B, 54–58). However, Grossman's brief cited only state cases in urging that court to find that the trial court abused its discretion in denying the continuance. His federal petition acknowledges the state law nature of this issue, asserting that the Florida Supreme Court erred in its application of state law. (*See* Petition, p. 61). The lack of a federal constitutional issue precludes review in this Court. *Pulley*, 465 U.S. at 41, 104 S.Ct. 871; *McCullough*, 967 F.2d at 535–36.

Furthermore, Grossman has not shown any constitutional error. The Florida Supreme Court denied this claim, noting that "appellant had been granted two prior continuances and co-counsel had been appointed to assist counsel in trial preparation. We see no abuse of discretion in denying the third request for a continuance which was filed four days prior to trial." *Grossman*, 525 So.2d at 836. This holding is factually correct, and Grossman has not cited any existing federal law that was contrary to or unreasonably applied in the

rejection of this claim. His suggestion that a continuance would have permitted counsel to secure testimony from Don Smith is refuted by testimony from the evidentiary hearing establishing that counsel would not have presented Smith even if there had been more time (Ex. L, V11/2006–07).

In addition, given the strength of the evidence against Grossman, any possible error in this regard would clearly be harmless under *Brecht.* Grossman is not entitled to habeas corpus relief on ground twelve.

### Ground Thirteen

■■■ Grossman contends that it was improper to admit gory and gruesome photographic evidence which depicted the results of his actions on Officer Park. Grossman raised this claim on direct appeal (Ex. B, pp. 65–66). Once again, this is an issue that was presented in state court as a matter of state law, and it is therefore beyond the scope of this Court's review. No federal constitutional question was fairly presented in Grossman's state court argument on this issue.

■■■ Furthermore, Grossman has not shown that a constitutional error occurred. In his federal habeas corpus petition, he cites *Tucker v. Kemp,* 481 U.S. 1063, 107 S.Ct. 2209, 95 L.Ed.2d 863 (1987) for the proposition that the introduction of inflammatory and prejudicial photographs can rise to the level of impinging the "constitutional right to fundamental fairness and a reliable sentencing determination." He alleges that in his case the grotesque photographs of Officer Park's shaven head did not reflect the original crime, and that such photographic evidence created an impermissible risk that the defendant's death sentence was based on considerations that are "totally irrelevant to the sentencing process." He claims that the cause of death had been clearly established by the testimony of the medical examiner, and

that there was no reason for the State to introduce the photograph of Officer Park after her head had been shaved in preparation for the autopsy other than to inflame the jury and emphasize the gruesome nature of the crime.

Grossman alleges that the still photographs of Officer Park at the scene of the crime shown to the jury were extremely gory and gruesome and were merely repetitions of scenes in a video tape that was played to the jury.

On appeal, Grossman disputed the admission of Exhibits four and eleven (found in the record at Ex. A, V17). The Florida Supreme Court denied the claim, stating, "the photographs of the crime scene and the victim's head were relevant evidence of the method and cause of death. Given the nature of the subject, they are not unnecessarily gruesome; relevancy is the test." *Grossman,* 525 So.2d at 837. The Florida Supreme Court is the final arbiter of Florida law; federal courts must respect that law absent a constitutional violation. A federal habeas court may not issue the writ on the basis of a state's interpretation of its own laws and rules, absent extreme circumstances. *Pulley,* 465 U.S. at 42, 104 S.Ct. 871. No such circumstances have been demonstrated in this case.

The Florida Supreme Court's finding of relevancy is consistent with other Florida cases. *See Henderson v. State,* 463 So.2d 196, 200 (Fla.1985) (introduction into evidence of photographs depicting victims' partially decomposed bodies not error); *Mills v. State,* 462 So.2d 1075, 1080 (Fla. 1985) (no error in admitting photographs of the skeletal remains of the victim); *Straight v. State,* 397 So.2d 903, 910 (Fla.), *cert. denied,* 454 U.S. 1022, 102 S.Ct. 556, 70 L.Ed.2d 418 (1981); *Foster v. State,* 369 So.2d 928, 930 (Fla.), *cert. denied,* 444 U.S. 885, 100 S.Ct. 178, 62 L.Ed.2d 116 (1979).

Grossman has failed to demonstrate that the state courts' rejection of this claim relied on erroneous facts, or applied established federal law in a manner that was contrary to or objectively unreasonable in light of United States Supreme Court precedent. He has not cited a United States Supreme Court case that even reached the issue he raises. Furthermore, any possible constitutional error would be harmless under *Brecht.* Therefore, no habeas relief is warranted on ground thirteen.

## Ground Fourteen

In ground fourteen, Grossman alleges several claims. He challenges 1) the propriety of comments by the prosecutor in voir dire and closing argument; 2) testimony relating to the victim's demeanor and work history; and 3) victim impact information provided to the judge prior to sentencing. He alleges that the state trial court's error as to these claims violated his Sixth, Eighth, and Fourteenth Amendment rights.

The first claim, relating to comments by the prosecutor in voir dire and closing argument, has never been presented to any state court and therefore must be dismissed as unexhausted. *Picard,* 404 U.S. at 275, 92 S.Ct. 509. Since there are no available state judicial remedies for untimely consideration of this claim, the claim is procedurally barred unless Grossman can show cause and prejudice or a claim of actual innocence to overcome the bar. He has not done so.

Grossman raised his challenge to the testimony regarding Officer Park's demeanor just prior to her murder and her work history on direct appeal. (Ex. B, pp. 60–62). Grossman's claim challenged a violation of state law. Because he did not raise a federal claim in state court, the claim is procedurally barred in this Court. Grossman has not shown cause and prejudice to overcome the procedural bar.

Finally, Grossman's argument that improper victim impact evidence was presented to the trial judge for consideration of Grossman's sentence in violation of *Booth v. Maryland,* 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), was addressed in a supplemental brief (Ex. E), and expressly found to be procedurally barred by the Florida Supreme Court. *Grossman,* 525 So.2d at 842. Therefore, this aspect of ground fourteen is also procedurally barred.

■ In addition to finding Grossman's *Booth* claim to be procedurally barred, the Florida Supreme Court extensively analyzed the relevant case law and concluded that, had the issue been preserved for appeal, any error in the consideration of this evidence by the trial judge was harmless beyond any reasonable doubt. *Grossman,* 525 So.2d at 846. The Florida Supreme Court noted that the jury did not hear or consider the challenged victim impact evidence, yet unanimously recommended a death sentence. The Florida Supreme Court stated that this situation demonstrated that the victim impact evidence could not have affected the sentence. Grossman has not identified any federal law that establishes *Booth* error is not subject to a harmless error analysis, or that the Florida courts' analyses in this case were flawed.

The United States Supreme Court has determined that *Booth*'s holding as to the unconstitutionality of considering victim impact information in capital sentencing proceedings was incorrect. *Payne v. Tennessee,* 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991) (overruling *Booth* and holding that a state may permit the admission of victim impact evidence and prosecutorial argument on that subject in capital sentencing proceedings without offending the Constitution). Although Grossman had the benefit of application of

the *Booth* decision in his direct appeal, the Florida Supreme Court's analysis of his victim impact claim can not be deemed unreasonable where subsequent case law demonstrates that no constitutional error even occurred.

Grossman has not demonstrated that the state courts' rejection of this claim relied on erroneous facts, or that the state courts applied law contrary to established United States Supreme Court precedent or. in a manner which was objectively unreasonable in light of such precedent. Therefore, no habeas relief is warranted on ground fourteen.

### Ground Fifteen

Grossman's next claim is a legal argument again disputing the constitutionality of Florida's death penalty statute. He alleges that Florida's capital sentencing scheme denies him his rights to equal protection and due process of law, and that the sentencing scheme constitutes cruel and unusual punishment on its face and as applied in this case.

He alleges that once an aggravating factor is found, Florida law provides that death is presumed to be the appropriate punishment and that the presumption can only be overcome by mitigating evidence so strong as to outweigh the aggravating factor. He claims that this systematic presumption of death does not satisfy the Eighth Amendment's requirement that the death penalty be applied only to the worst offenders. Grossman cites *Proffitt v. Florida*, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976) and claims that Florida's capital sentencing procedure does not have the independent reweighing of aggravating and mitigating circumstances required by *Proffitt*.

He again alleges that the State's failure to provide a defendant with notice of the aggravating circumstances which make the offense a capital crime violates his constitutional rights. Grossman raised this claim on direct appeal. (Ex. B, 86–93). It was denied on the merits by the Florida Supreme Court. *Grossman*, 525 So.2d at 837–838.

Grossman also alleges that juries receive unconstitutionally vague instructions on the aggravating circumstances. This Court construes Defendant's allegation, since he quotes *Proffitt*, to mean that the jury receives unconstitutionally vague instructions on the heinous, atrocious, or cruel aggravator. The Court partially discussed this issue above. However, for completeness, the Court will again address this issue.

In *Maynard v. Cartwright*, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988), the United States Supreme Court held that, in the absence of limiting construction by the state courts, the Oklahoma death penalty statute's aggravating circumstance that the murder was especially heinous, atrocious or cruel (HAC), did not adequately channel jury discretion and was unconstitutionally vague and overbroad. Florida, unlike Oklahoma, had given its facially vague HAC aggravator a limiting construction sufficient to satisfy the Constitution, *see Proffitt v. Florida*, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976). Until the Supreme Court's 1992 decision in *Espinosa v. Florida*, 505 U.S. 1079, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992), Florida trial judges' reliance upon the HAC aggravating factor was not regarded a problem because of the assumption that trial judges were applying the HAC aggravator in accordance with the limiting construction.

■ The Florida Supreme Court had held that there was no need to instruct the jury on the HAC factor with *Maynard v. Cartwright* specificity since, under the Florida statutory scheme, the judge, and not the jury was the sentencer for Eighth Amendment purposes. *Smalley v. State*, 546 So.2d 720 (Fla.1989). Federal courts

agreed. *Bertolotti v. Dugger*, 883 F.2d at 1527. The assumption underpinning that approach was rejected by the United States Supreme Court in the *Espinosa* decision in 1992. That Court ruled that if a weighing state decides to place capital-sentencing authority in two actors (the trial judge and the jury) rather than one, neither actor is permitted to weigh invalid aggravating circumstances.

 The question regarding the retroactivity of *Espinosa* was answered in *Lambrix v. Singletary*, 520 U.S. 518, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997). In *Lambrix*, the Court held that *Espinosa* announced a new rule and was, therefore, not retroactive under the doctrine of retroactivity announced in *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). Because the holding in *Espinosa* is not retroactive, pre-*Espinosa* law must be applied in Grossman's case, and *Proffitt* is applicable.

 In *Sochor v. Florida*, 504 U.S. 527, 112 S.Ct. 2114, 119 L.Ed.2d 326 (1992) the Supreme Court held that the state court trial judge is presumed to have knowledge of the law. The Florida Supreme Court has found that the HAC factor was properly applied in cases similar to Grossman's. See *Beasley v. State*, 774 So.2d 649 (2000) (the finding that murder was especially heinous, atrocious or cruel was supported by evidence that the victim was brutally beaten while attempting to fend off blows to the head, before he was fatally shot); See also *Heiney v. State*, 447 So.2d 210 (1984); *Buford v. State*, 403 So.2d 943 (1981). Therefore, no Eighth Amendment error could be inferred from the fact that the trial judge weighed the HAC factor in a case in which the Defendant beat the victim prior to shooting her. The Florida Supreme Court has consistently held that heinousness was properly found in such situations and the state court

judge was presumed to know this law. *See Sochor*, 504 U.S. at 535, 112 S.Ct. 2114.

The issue of retroactivity of *Espinosa* having been decided adversely to Grossman by *Lambrix*, and the trial judge being presumed to be familiar with the body of Florida law dealing with HAC cases, Grossman is left with no viable argument regarding constitutional error centered around the jury instructions on the HAC factor.

### *Facial Constitutionality of Florida Death Penalty Statute*

Furthermore, Section 921.141, Florida Statutes (1985), has been repeatedly upheld against arguments that it violates due process and equal protection. *Ferguson v. State*, 417 So.2d 639 (Fla.1982) and *Proffitt v. Florida*, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976).

Grossman has failed to identify any United States Supreme Court decision that is contrary to the state courts' rejection of this claim, or demonstrates that established federal law was unreasonably applied by the state courts. The only case he offers is *Proffitt v. Florida*, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976), which expressly upheld the facial constitutionality of Florida's death penalty scheme. Rejection of Grossman's claim was consistent with, and required by, *Proffitt*. As no state or federal court has ever invalidated Florida's statute on the claims Grossman raises, he is not entitled to relief.

### Ground Sixteen

 Grossman asserts that his trial attorneys were ineffective for conceding his guilt without his knowledge and consent. Grossman raised this claim in a successive state petition for habeas relief. (Ex. T, 7–11). The Florida Supreme Court denied the petition without explanation. (Ex. W). Because the successive petition was procedurally barred, for the reasons asserted in

the State's response (Ex. U, 5–9), this claim is procedurally barred in this Court. *Coleman*, 501 U.S. at 735–36, 111 S.Ct. 2546; *Turner*, 339 F.3d at 1281; *Kight*, 50 F.3d at 1544–1545. Grossman has not shown cause and prejudice to overcome this bar.

Even if ground sixteen were not procedurally barred, the claim is without merit, because, as a matter of law. Grossman asserts, in a conclusory manner, that his attorney, "essentially conceded that the crux of the State's case was provable and in doing so essentially admitted the defendant's guilt," citing to pages 1824–26 of the record from Grossman's direct appeal. (Petition, p. 74). Grossman does not recite any of the purported concession, but quotes only from part of the defense opening argument where counsel is telling the jury that there was no premeditated killing but only a terrified reaction to the discharge of the gun. Grossman then challenges these statements as "weak" and chastises counsel for failing to present evidence to support this theory of defense. It appears that Grossman is not challenging his attorney's concession of guilt, but is challenging the strength of his attorney's assertion of innocence.

A review of the defense opening and closing statements confirms that counsel did challenge the state's case, particularly with regard to the element of premeditation. To the extent that Grossman claims that his attorneys should not have conceded any of the elements of murder, his argument is without merit. He has cited no authority to support his contention that counsel is rendered ineffective by making a strategic decision to gain credibility to the jury by acknowledging guilt of a lesser offense. The record in this case demonstrates that defense counsel forcefully argued to Grossman's jury that Grossman was only guilty of second degree murder. In his brief opening statement, counsel

admitted to the jury that Grossman "did things wrong," but followed with, "I'd adamantly defend Martin Grossman on the principle that he did not commit first degree murder. The evidence in this case will not show that Mr. Grossman committed a premeditated homicide of this lady, nor will it show that the homicide was committed because of some felony, one of the enumerated felonies that may be argued at the conclusion of this trial." (Ex. A, V6/1825).

A reading of the opening argument in its entirety demonstrates that defense counsel never wavered from the forceful argument that "this is not a first degree murder" (Ex. A, V6/1830), with counsel repeatedly urging that "the evidence does not establish a premeditated killing or does not establish one of the enumerated felonies" (Ex. A, V6/1826); "there was no intent." (Ex. A, V6/1827, 1829). Since Grossman's attorneys did not abandon his defense or acknowledge that he was guilty of first degree murder, this case is easily distinguished from the Florida Supreme Court decision in *Harvey v. State,* 2003 WL 21511339 (Fla. July 3, 2003) and *Nixon v. State*, 857 So.2d 172 (2003) cited in Grossman's memorandum.

The United States Supreme Court, which accepted certiorari in the *Nixon* case, reversed the Florida Supreme Court's ruling in *Florida v. Nixon*, —— U.S. ——, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004). The Supreme Court found that defense counsel's failure to obtain defendant's express consent to a strategy of conceding guilt at the guilt phase of a capital trial did not automatically render counsel's performance deficient. *Nixon* held that despite counsel's concession of guilt, defendant retained the rights accorded a defendant in a criminal trial: the State was obliged to present evidence establishing the essential elements of the

crime with which defendant was charged. The aggressive evidence was separated from the penalty phase, enabling the defense to concentrate that portion of the trial on mitigating factors, and the defense reserved the right to cross-examine witnesses for the prosecution and could endeavor to exclude prejudicial evidence. U.S.C.A. Const. Amend. 6. Reasonableness of defense counsel's performance in proceeding with a strategic choice that included conceding guilt at the guilt phase of a capital case, after counsel informed the defendant of the strategy and defendant was unresponsive, was to be judged in accord with the *Strickland v. Washington* inquiry generally applicable to ineffective assistance of counsel claims.

The state courts properly denied relief on both procedural and substantive grounds. Grossman has clearly failed to demonstrate that the state courts' rejection of this claim relied on erroneous facts, or applied law contrary to established United States Supreme Court precedent or in a manner which was objectively unreasonable in light of such precedent. Therefore, no habeas relief is warranted on ground sixteen.

### Ground Seventeen

Grossman alleges that he was denied the effective assistance of counsel at the penalty phase of his trial in violation of his Sixth and Fourteen Amendment rights and contrary to the holding in *Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003).

Grossman raised this claim in a successive state petition for habeas relief (Ex. T, 11–22). The Florida Supreme Court denied the petition without explanation (Ex. W). Because the successive petition was procedurally barred, for the reasons asserted in the State's response (Ex. U, 5–6, 11–12), the claim is procedurally barred in this Court. *Coleman*, 501 U.S. at 735–36, 111 S.Ct. 2546; *Turner*, 339 F.3d at 1281;

*Kight*, 50 F.3d at 1544–1545. Grossman has not shown cause and prejudice to overcome the procedural bar.

Even if the claim were not procedurally barred, the claim is without merit. A review of the record establishes that Grossman is not entitled to relief as a matter of law. Grossman merely re-asserts his prior postconviction claim that his trial attorneys were ineffective for failing to adequately explore possible mitigating circumstances. Citing *Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003), Grossman claims that his attorneys' penalty phase investigation was incomplete and constitutionally deficient. However, Grossman has not offered any additional facts that were not known at the time his prior ineffective assistance of counsel claim was litigated under *Strickland*. In fact, he relies exclusively on the postconviction affidavits and testimony to support his assertion that his attorneys rendered constitutionally deficient performance. However, there has been no change of law on the issue. Grossman's reliance on *Wiggins* offers nothing more than a renewal of his prior claim under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Wiggins* merely applied *Strickland* to the facts of that case, it did not change the standard by which a claim of ineffective counsel is to be judged.

In addition, the prevailing law for the measuring stick of "clearly established Federal law" in habeas review refers only to the holdings of the United States Supreme Court at the time of the relevant state law decisions. *Putman*, 268 F.3d at 1241. Even if, as Grossman suggests, *Wiggins* changed the law with regard to the analysis of ineffectiveness, *Wiggins* had not been decided at the time the Florida Supreme Court resolved his ineffectiveness claim, and therefore any changes to

the law would not be applied to his case on habeas review.

*Wiggins* does not demonstrate that Grossman's prior postconviction appeal was wrongly decided. In *Wiggins,* the defense attorney made a passing reference in the penalty phase to Wiggins' poor childhood, but presented no evidence at all on the issue, focusing instead on the defense penalty phase theory that Wiggins was not directly responsible for the victim's death. The decision to focus on retrying Wiggins' criminal culpability rather than presenting mitigating evidence was premised solely on a review of Wiggins' PSI and a social services file relating Wiggins' background in foster care from the time he was about six years old. Although these records gave some indication of a severe history of physical and sexual abuse, counsel chose not to investigate this background in light of the adopted defense strategy. The United States Supreme Court found that his attorneys were ineffective because they did not adequately explore the available mitigation before choosing the alternative theory of retrying culpability.

Grossman's claim of ineffective assistance is refuted by the postconviction record. Grossman's petition does not accurately relate many of the facts from the postconviction evidentiary hearing. Although the petition repeatedly asserts that attorneys Tom McCoun and Ira Berman did absolutely nothing to investigate mitigation beyond speaking with Grossman, his mother, and grandmother, the record reflects, as the trial court initially found, that the attorneys did a great deal more.

It is apparent that the attorneys did not fail to expand the investigation beyond interviewing the defendant and his immediate family where three other penalty phase witnesses were presented, and a number of other individuals were interviewed but did not have anything positive that the attorneys could use.

Attorney McCoun testified that he had begun a preliminary investigation for possible penalty phase witnesses before the guilt phase of the trial commenced. (Ex. L, V11/1999–2002). Specifically, Attorney McCoun had talked to Grossman, Grossman's mother and to Grossman's grandmother a number of times, and had attempted to develop other possible witnesses through these people. However, Grossman's mother indicated she did not know of anyone that would come in to speak on Grossman's behalf. (Ex. L, V11/2047; V12/2227, 2241–43, 2248). Attorney McCoun located and presented Steven Martakas, a witness who testified that he had been Grossman's best friend in junior high; he had also researched Grossman's past addresses, and his educational, medical, and emotional background. (Ex. L, V11/1999–2002, 2030–31). He sought funds for a court-appointed confidential expert and explored the possibility of mental mitigators with Dr. Sidney Merin. (Ex. L, V11/1999–2000). When a motion to continue the trial was denied two weeks prior to the start of the penalty phase, Attorney McCoun enlisted the aid of Attorney Ira Berman in further penalty phase preparation. (Ex. L, V12/2225). Attorney Berman was able to locate witnesses who had known Grossman while he had been in jail for the previous year, and these witnesses were presented and accomplished the defense's goal of demonstrating that Grossman was "not a beast" but could be courteous, cooperative and nonviolent. (Ex. L, V12/2251–52).

Grossman asserts that further investigation would have revealed potential witnesses such as the affiants whose affidavits were introduced at the postconviction hearing. However, Grossman did not

identify any particular witness or mitigation that should have been presented. He ignores the fact that Attorney McCoun and Attorney Berman both testified they were aware of some of these witnesses and would not have used them. (Ex. L, V11/2000, 2030, 2035–42, 2045–48; V12/2263–65). Evidence also indicated that a number of the affiants later discounted the affidavits, acknowledging they had been signed under protest and were not based on personal knowledge. (Ex. L, V15/2574–2613).

Unlike the situation in *Wiggins,* this trial included the presentation of background evidence for mitigation. The defense strategy for the penalty phase was to demonstrate that Grossman was not an animal but a young man with positive characteristics who did not deserve to die. (Ex. L, V11/2036–38, 2042, 2048, 2050; V12/2227, 2229–30, 2244, 2245, 2248, 2263–64; Ex. A, V15/2688–2696, 2703–2706). Grossman's mother, Myra, testified that Grossman's father had died when he was 50 years old and Grossman was 15 (Ex. A, V15/2609). She testified that Grossman was a Boy Scout, had a difficult time dealing with his father's death, worked and supported his mother, and was a typical teenager with a car and pets (Ex. A, V15/2610–2614).

The defense also presented witnesses Detention Officer Thomas Campbell and Corrections Social Worker Carolyn Middleton who described Grossman as a good inmate who did not cause problems, was not violent, and took his trial seriously (Ex. A, V15/2624–27; 2639–42). Another witness was Steven Martakas, Grossman's close friend from junior high school. (Ex. A, V15/2631–34). Martakas stated that Grossman was a good friend, always there

for him, and that Grossman gave him advice and told him not to smoke or take drugs. (Ex. A, V15/2636–37).

Grossman has failed to show that the strategy to present only favorable, positive penalty phase testimony was unreasonable, uninformed, or inconsistent with the later-adopted standards. Attorney McCoun interviewed family members and school friends in furtherance of this strategy, reviewed Grossman's medical and educational history, and investigated potential mental health defenses. (Ex. L, V11/1999–2002, 2030–31).

Furthermore, *Wiggins* did not change the legal standard for the determination of prejudice when a claim of ineffective assistance of counsel is raised.[12] In Grossman's case, the jury recommendation of death was unanimous. Both trial attorneys recognized at the evidentiary hearing in the state trial court that putting on additional mitigating evidence probably would not have changed the outcome. (Ex. L, V11/2035; V12/2245–48, 2269–70). Attorney Berman testified that this case presented a terrible emotional factual scenario in the community; that the victim in this case had many qualities to generate sympathy with the jury, being a young female[13], law enforcement wildlife officer. (Ex. L, V12/2274). Attorney Berman did not believe that additional information about Grossman's background as a young child, and even up to thirteen years of age, would have changed the jury recommendation. (Ex. L, V11/2048; V12/2244–48).

The trial state court trial judge who considered all of the trial and postconviction evidence in mitigation found that, even if some deficiency could be identified, no

---

12. The Maryland state courts had not addressed prejudice, and the United States Supreme Court determined that the undiscovered mitigation may have made a difference to at least one juror.

13. Grossman argues that this argument is not valid since the officer was 26 years old.

prejudice occurred. (Ex. L, V16/2836–37). This finding is entitled to considerable weight, since the finding was rendered by the same judge that imposed Grossman's death sentence.

Grossman's claim of ineffective assistance of counsel raised in ground seventeen is procedurally barred and without merit. Habeas corpus relief is not warranted on this ground.

### Ground Eighteen

■ Grossman claims that the Florida death sentencing statute as applied is unconstitutional under the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution under the holding in *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). Grossman raised this claim in his successive state habeas corpus petition. (Ex. T, 23–34).

The claim offers no basis for relief. The United States Supreme Court has expressly held that *Ring* cannot be applied retroactively in habeas actions. *Schriro v. Summerlin*, —— U.S. ——, ——, 124 S.Ct. 2519, 2526, 159 L.Ed.2d 442 (2004).

■ Furthermore, the Florida capital sentencing procedures do not create the Sixth Amendment error identified in *Ring*. The Florida Supreme Court has repeatedly held that, unlike Arizona, a Florida defendant is eligible for the death penalty upon conviction for first degree murder. *See Mills v. Moore*, 786 So.2d 532, 536–538 (Fla.2001) (statutory maximum for first degree murder is death); *Shere v. Moore*, 830 So.2d 56, 61 (Fla.2002) ("This Court has defined a capital felony to be one where the maximum possible punishment is death."). Because *Ring* holds that any fact which increases the penalty beyond the statutory maximum must be found by the jury, and because death is the statutory maximum for first degree murder in Florida, *Ring* does not establish Sixth Amendment error under Florida's statutory scheme.

In addition, Grossman's death sentence is supported by a recommendation of death by a unanimous jury. Thus, any possible requirement for a jury finding of death eligibility was clearly fulfilled in this case. Grossman is not entitled to relief on ground eighteen.

Finally, the arguments Grossman raises in his reply are not persuasive. Grossman has not rebutted the state courts' factual findings by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Nor has he shown that the state courts' decisions resulted in a decision that was contrary to, or involved an unreasonable application, of clearly established Federal law, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Accordingly, the Court orders:

That Petitioner's petition for writ of habeas corpus is denied, with prejudice. The Clerk is directed to enter judgment against Petitioner Grossman and to close this case.